RESPUBLICA *against* PHILIP URBIN DUQUET.

The law of 18th April 1795, directing the corporation of Philadelphia to pass ordinan-
ces to prevent the erection of wooden buildings in certain parts of the city, as they
may judge proper, is constitutional.

A city ordinance founded thereon, prescribing a penalty on conviction of the offence on
indictment in the Mayor's Court, is good.

Court will not pronouce a law unconstitutional unless in a clear case.

The defendant was indicted in the Mayor's Court of the city of
Philadelphia, on two counts. 1st, That he on the 2d January 1797,
did make, build and erect a certain wooden mansion house, on the
east side of Crown street, between Sassafras and Vine streets, within
that part of the city which lies to the eastward of Sixth street from
the river Delaware, between the south side of Vine street, and the
north side of Sassafras street, to the great damage and common nui-
sance of all the liege subjects of Pennsylvania, against the form of the
act of assembly, and against an ordinance of the mayor, alderman
and citizens of the city of Philadelphia, &c. 2d. That the said defen-
dant did cause to be made, built and erected a certain other wooden
mansion house on the east side of Crown street aforesaid, &c. pursu-
ing the first count.

The indictment having been removed by certiorari into this court
to September term 1797, it was afterwards agreed by writing, under
the hands of the attorney general and of the defendant and his counsel,
that a verdict should be considered as taken for the commonwealth,
and that a motion in arrest of judgment should be made on the return
of the postea; which motion should be understood to extend to all mat-
ters of law arising on the face of the record, including the validity
and sufficiency of the ordinance and the constitutionalty of the act of
assembly, and the jurisdiction of the Mayor's Court.

The city ordinance was enacted on the 6th June 1796, founded on
the act of assembly of the 18th April 1795, (3 Dall. St. Laws, 771,)
which it recited, and contained the following sections :

" Section 1. From and after the passing of this ordinance, no wood-
en mansion-house, shop, ware-house, store, carriage-house or stable,
shall be erected or built within that part of the city of Philadelphia
which is comprised within the limits hereinafter mentioned, that is to
say, from the river Delaware to the east side of Sixth street, in those
parts of the city included between the south side of Vine street, and
the north side of Sassafras or Race street, and between the south side
of Walnut street, and the north side of South or Cedar street, and
from the river Delaware to the east side of Tenth street, in that part
of the city included between the south side of Race or Sassafras street,
and the north side of Walnut street."

"Section 2. If after the passing of this ordinance, any per-

son or persons shall erect and build, or cause to be erected and built, any wooden mansion-house, store, carriage-house or stable, upon any lot or piece of ground within those parts of the city herein-before specified, and shall be duly convicted thereof, upon indictment found against him, her or them, in the Mayor's Court of the city of Phila-delphia, every such person or persons so offending and convicted, shall forfeit and be sentenced and adjudged to pay a fine of five hundred dollars."

Messrs Rawle and *Du Ponceau* for the defendant, laid down four positions. 1st, Corporations at common law, independent of statutes or ancient custom, cannot make any bye-laws affecting the rights of prop-erty. 2d, Such corporations cannot enforce their bye-laws in the manner contemplated by the present ordinance, nor constitute offences punishable by indictment. 3d, The legislature of Pennsylvania can-not confer such power to a corporate body, but must exercise them. 4th, The Mayor's Court by reason of their interest, have no jurisdic-tion over such offences.

1. Corporations originated in feudal times amongst a barbar-ous people. Such bodies received their powers at first but spar-ingly, but at length from a more lavish hand. By the common law, corporations cannot make ordinances without a custom or char-ter from the crown, unless for things which concern the public good, as the repairs of churches, highways, &c., 5 Co. 62, *a*. They cannot infringe the liberty of the people by imprisonment, but may inflict a penalty. Courts will declare their bye-laws invalid if against *Magna Charta*. *Ib.* 64, *a*. So if the general law of the land. 2 Kyd's Law of Corpor. 109. Corporations erected by letters patent cannot make bye-laws to create a forfeiture, nor if erected by an act of parliament, unless such power is expressly given them thereby. 1 Term. Rep. 118.

2. Bye-laws may regulate but not restrain trade, unless warranted by particular customs. 1 Burr. 16. They may inflict pecuniary pen-alties, but these must be recovered by actions of debt or distress. 12 Mod. 686. These are the only modes of enforcing the ordinances of corporate bodies, which are in fact no more than a species of contracts amongst the individual members. And such are the powers which an-tecedent to the American revolution, were uniformly exercised by the corporations of the city of Philadelphia, and of the boroughs of Ches-ter, Bristol and Lancaster.

In no other instance than the present, have the city corpora-tion created an indictable offence; nor can any other bye-law be

shown which constitutes a criminal prosecution for the breach of it. The law of 18th April 1795, vests the city with no such power. The act of 11th March 1789, 2 Dall. St. Laws, 654, incorporating the city, before the adoption of the existing state constitution, *Ib.* 660, § 20, gives authority to the Mayor's Court, agreeably to the laws of the commonwealth, to try and determine all larcenies, forgeries, perjuries, &c. known to be indictable, but not to create new offences, and then to prosecute them in their own court for the emolument of the city. By the 12th section of the 5th article of the constitution of Pennsylvania, 3 Dall. St. Laws, XXXI, all indictments must conclude " against the peace and dignity of the commonwealth," not that an ordinance of the mayor, &c. All public prosecutions must emanate from the sovereign people; the attorney general acts as a great state officer against general public offenders.

The state constitution of 1776 has stronger words than the present one, with respect to the legislature. In the frame of government, Dall. St. Laws, Append. 56, § 2, it is said, the supreme legislative power shall be vested in a house of representatives, &c. In our present constitution, the first section of the first article declares, that the legislative power shall be vested is a general assembly, which shall consist of a senate and house of representatives. And the first section of the schedule thereto, specifies that all the rights as well of individuals as of bodies corporate, shall continue as if the said alterations and amendments had not been made. The 3d section of the 7th article of the constitution makes the same provision. It must therefore be understood, that while by the terms of the constitution, corporate bodies cannot be abridged of their rights, neither can those rights be augmented, but they must remain and continue as formerly.

The general rule is, that *delegata potestas non potest delegari.* But taking it at the utmost, when the legislative power to grant corporations is spoken of, it must be taken in reference to the rights usually and commonly exercised by such bodies, and not to extend further. Where a bye-law is contrary to charter, it is bad, and a new charter must be granted to warrant it. 6 Term Rep. 732. If the act of March 1789, incorporating the city, was sufficiently comprehensive, where was the necessity of the act of April 1795 ? This latter law delegates to the city a power to prevent the erection of wooden buildings, " as they may judge " proper." It does not grant them a new charter, but invests them with powers of legislation to a great—an unlimited extent, as to the subject matter. To the discretion of the city corporation it is submitted, whether they should make

it treason or felony, or class it under such criminal denomination as they might see fit; whether a loss of life or member, a forfeiture of lands or goods, banishment, imprisonment or pecuniary mulcts should be inflicted for the supposed offence of a party's consulting his own circumstances as to building on his own grounds! If the legislature may delegate such authority to the municipality of a large city, they may also confer the power on a smaller body. They may equally authorize the city corporation to make bye-laws for the interior police of Southwark or the Northern Liberties! This assumption of power would be too monstrous to be advocated, though there are no express words against it in the constitution. Extensive as the powers of legislation may be deemed, they must in the nature of the thing be circumscribed within reasonable limits. The omnipotence of the legislature has no meaning under a constitution accurately defining its powers. A right derived from a custom, is superior to a franchise, being coeval with the common law.

4. In 12 Mod. 674, Lord Chief Baron Ward, drew a distinction between interest and inconsistency; as in the latter case of a mayor suing before himself, though on the point of interest the mayor might have no greater share of the penalty, than the defendant. But this distinction has long since been exploded, and it is now settled, that judge, jury or sheriff, interested as freemen of a corporation, are incompetent to serve in cases respecting the interests of the body. 3 Burr. 1855-6. Where a judge has an interest, neither he nor his deputy can determine the cause, nor sit in court. Hardr. 503. The members of a corporation cannot be witnesses in cases for or against the company. 1 Vern. 254. Bunb. 40. And agreeably hereto, in Respub. v. Keiglar on an indictment similar to the present, tried in this court on the 28th November 1797, a freemen of the city was rejected as a witness. To prosecute for this offence in the Mayor's Court, makes the parties to the record the judges of the trial. On the ground of self preservation of the community, it is essentially necessary, that criminals should be punished; but corporations being limited as to place, extent and power, no necessity subsists as to their being vested with jurisdiction, in matters immediately concerning themselves. Besides, this ordinance is not confined to the citizens of Philadelphia; other persons may be the objects of it. The offence created, is beyond the control of the executive department, as fines unappropriated go to the corporation. 2 Kyd. Corpor. 157, 159. The only efficacious remedy for the evils intended to be guarded against by the present regulation, is to be found in a general

compreh⸱⸱⸱ve law of the state legislature, vesting the jurisdiction of the offence in a proper tribunal.

Mr. ⸱⸱ ⸱soll for the commonwealth. I shall divide my argument into two heads. 1st. Is the law of 18th April 1795, unconstitutional? 2d. If it is not, is the present city ordinance a good one? These considerations will take in all the controverted grounds.

1. The act of 11th March 1789, incorporates not a petty insignificant village, but a populous commercial city. It is obvious therefore, that the powers to be conferred, should be proportioned to the objects ⸱⸱⸱ added to be accomplished. In the language of Lord Chief Justice Holt, (12 Mod. 686,) we must consider the city "as a great community that have a legislative power intrusted to them for their better government, and can make laws to bind the property of those that live within that precinct, and also of all strangers whatsoever, that come within the limits of their jurisdiction; and it was necessary and convenient, that they should have such power, for the support of their government; and it is so in all countries and forms of government whatever, whether monarchy, aristocracy or democracy, or whatever order of government it be. For the supreme jurisdiction cannot have leisure to inspect into the small matters that concern the whole order and regulation of matters within that society or community, as they that are members of it shall."

It is certain, that the dawn of civilization gave birth to the erection of corporations in Europe. 1 Robertson's Charles V. 28, 32. The law of 1789, which new models the city corporation, separating the legislative and judicial powers, states in the preamble, the "necessity of investing the inhabitants of the city, with more speedy, vigorous and effective powers of government, than were . before established."

The 16th section gives them a general power to make bye-laws for the welfare of the city, provided they be not repugnant to the laws and constitution of this commonwealth. The 20th section, gives the Mayor's Court criminal jurisdiction within the city, of all such cases as would be cognizable in a Court of Quarter Sessions of any county, and to try and determine all offences against the city ordinances, without being accountable for any fines, except such as by law shall be made payable into the state treasury. And the 44th section enacts, that all doubts touching the act, shall be construed in all courts most favorably for the corporation.

The law of 1795, made with the professed design of "strengthening the security or property," empowers the corporation to pass

ordinances to prevent persons from erecting or causing to be erected any wooden mansion-houses, &c., within such part of the city, which lies to the eastward of Tenth street from the river Delaware, " as they may judge proper." From whence is it to be inferred, that this law is unconstitutional? Whence arise the doubts, that the legislature have exceeded their authority? The defendant in order to succeed, must make out a clear case; on him lies the *onus probandi*; every legal presumption is in favor of the constitutionality of the acts of the legislature.

[*Pur cur.* The law clearly is so; we must be satisfied beyond doubt, before we can declare a law void.]

Neither the constitution nor any law of the state, restricts the legislature from granting charters of incorporation with certain powers. The rights of corporate bodies under former grants, are expressly reserved to them under the constitution, as has been already stated; and the want of such power in the legislature, would be highly inconvenient and mischievous, for the reasons before given by Lord Holt. If we consult history, we shall find that such delegated authorities have been very frequent.

The legislature by their act of 1795, have introduced the rule for prevention of wooden buildings within the populous parts of the city, but have submitted the modification of it to the city corporation. The extention of the ordinance to particular streets, is a mere local matter, with which that corporate body must necessarily be best acquainted,

The parliament of Great Britain, by a statute passed (3 Ruff. Stat. 303. 19, Car. 2 c. 3) " for rebuilding the city of London," have shown their idea of the necessity of interposing strong remedies, in order to preserve the city from future fires. By the 3d section, a person building against the prescribed directions, is to be committed to gaol until he shall abate the same. The 7th to the 14th section inclusive, direct the materials of which, and in what manner the houses shall be built, &c.; and the 15th section provides, that in case of persons omitting to rebuild their houses within three years, their ground shall be valued by an inquest, and subjected to sale by the mayor, aldermen and common council of the city. A variety of other regulations are made, to guard against future unhappy accidents by fire. 1 Maitland's Hist. Eng. 54. It is remarked by the same author, that the city corporation, in pursuance of their power, actually threw down a number of houses for the purpose of opening certain streets. *Ib.* 443.

The cities of New York and Charlston have adopted regulations to to preserve themselves from fire.

We have no unfavorable precedents against us. On the first point the matter is reduced to a simple question : either the legislature have or have not the powers of incorporation ; if they have, their discretion must govern, both on the original and superadded powers conferred on such corporate bodies.

2. Most of the questions on the validity of corporation ordinances have turned on their incidental and implied rights. 1 Woodes, 495. The charter of the city of London was confirmed by stat. 15 Edw. 3, in general words, 8 Co. 122. a. Consequently, many by-laws enacted since that time, have undergone much litigation.

It will be remembered that this is a contest between the state and a citizen of Philadelphia, on a prosecution for a common and most dangerous nuisance. The dreadful fire in the wooden building denominated Rickets's Circus, just extinguished, distant only one square from where the court now sits, shows strongly the great mischiefs to which the citizens are exposed by houses built of such combustible materials. It is laid down in the case already cited from 3 Burr. 1858, that corporations in the regulation of their own members, may indeed make by-laws and enforce the observance of them by prosecution amongst themselves, but not as to strangers, unless there be a custom to support it. Surely an act of the legislature is equivalent to any custom. The defendant has voluntarily entered into the jurisdiction of the corporation and has assented to the ordinance, either by himself or his representatives. A corporation may make private statutes for the better government of the corporation, which are binding on themselves. 1 Bla. Com. 475, 476, and should act up to the end or design for which it was instituted. Ib. 480. A by-law compelling every freeman of a company to accept its livery, under a penalty, is good. Say. 274. The law of 1795, does not point out the mode of enforcing the ordinance grounded thereon, but submits it to the city corporation "as they may judge proper." Have not the latter acted with great caution and discretion herein ? They have directed the prosecution for the offence by indictment, where the known officer of the state conducts the procedure. They have not limited it to their own exclusive jurisdiction ; they have made no appropriation of the fine to themselves, which consequently must go into the state treasury. The ordinance and proceedings under it are subjected to every reasonable control. To assert, that bringing actions for penalties would effect the object comtemplated by the legislature, the security of the city, is highly ridiculous. To accomplish

the measure, more vigorous methods are indispensably necessary.   Not-withstanding this ordinance, new wooden buildings are daily erected in all directions, and it will require every energy to repress the growing evil.

The usual mode of enforcing a bye-law by action of debt or distress, depends on custom, and custom may warrant imprisonment for breach of it.   12 Mod. 686. 2 Kyd. Corpor. 169. 1 Vent. 115.   By-laws im-posing a forfeiture of goods is void, if by patent; but good, if by custom. 8 Co. 125. *a.* 4 Vin. 307.   A bye-law in London, that none shall make a hot press, nor use it within the city, under the penalty of 10*l.* because of the danger with regard to fire, &c. is good. 5 Co. 162. 1 Rol. Abr. 865. pl. 9. 1 Bac. 340.   If an ancient custom therefore may authorize a deviation from general rules in the case of ordinances of a corporate body, it cannot be pretended that a law of the country, submitting the mode of prevention of great public nuisances to the dis-cretion of a corporation, will not be equally authoritative.

In England, the powers usually granted by the crown are more limit-ed than where corporations are granted by statute.

Shippen, C. J. pronounced the opinion of the court.   The questions in this case are principally two : 1st, Whether the corporation of the city of Philadelphia have passed such an ordinance under the powers vested in them by act of assembly, as by law they might do, both with respect to the mode of punishment, and the court in which the offend-er is to be tried.   And 2d, If they have passed a valid ordinance oc-cording to the act, is that act a constitutional one ?

The material objection to the ordinance is, that they have directed a prosecution by indictment, whereas it is contended, that a corporation has only power to inflict pecuniary penalties to be levied by distress, or recovered by action of debt.   This is undoubtedly true, with regard to ordinances founded on no authority but their own ; but in this case they are vested with extraordinary powers by the acknowledged legis-lature of the state.   By the act of assembly of 11th March 1789, § 20, the corporation have power to make bye-laws, &c. for the well gov-erning and welfare of the city, and to try and determine certain spec-ified offences therein named, as larcenies, forgeries, &c. and likewise all offences which shall be committed within the said city, against the laws, ordinances, regulations or constitutions, that shall be made, ordained or established in pursuance of that act, and to punish the offenders as by the said laws or ordinances shall be prescribed.   2dly, By the act of 18th

April 1795, the legislature enacts, that the mayor, alderman and common council shall be empowered to pass ordinance to prevent any person or persons, from erecting or causing to be erected, any wooden mansion house, shop, ware house, store, carriage house, or stable, within such part of the city of Philadelpia, as lies to the eastward of Tenth street from the river Delaware, "as they may judge proper." So that the state legislature have exercised their judgment upon the subject matter, and directed by law, that every person should be prevented from erecting wooden buildings within certain populous parts of the city ; and the mode of preventing such an evil is left to the mayor, aldermen and common council, by very general words, " as they may judge proper.

This act, connected with the former act, giving the Mayor's Court power to try all offences against the laws and ordinances which the said corporation shall make in pursuance of the former act, and to punish the offences as by the said laws and ordinances shall be prescribed, appears to us decisive, that they may punish offenders against the ordinance, by indictment in the Mayor's Court.

It is not sufficient to say, that the corporation could not of their own authority pass ordinances to punish by indictment or imprisonment, because they are expressly authorized to try and punish offenders against their ordinances in the same court and in the same manner as larcenies, forgeries, and other such offences as are directed to be punished. And although corporations cannot of themselves make ordinances to punish offenders by imprisonment, yet the law cases are express, that if such a power is founded on the custom, they may ; and surely an act of the legislature is as effectual as any custom can be.

As to the constitutionality of these laws, a breach of the constitution by the legislature, and the clashing of the law with the constitution, must be evident indeed, before we should think ourselves at liberty to declare a law void and a nullity on that account yet if a violation of the constitution should in any case be made by an act of the legislature, and that violation should unequivocally appear to us, we should think it our duty not to shrink from the task of saying such law is void. We however see no such violation in the present case, and therefore give judgment for the commonwealth.