R. V. PYE ET AL. v. JULIA R. PETERSON.

1. CITY CHARTER—FIRE LIMITS.—Without an express grant of power, a city, by its authorities, cannot establish fire limits, declare wooden buildings erected therein to be nuisances, and provide for the removal of such buildings and the punishment of those erecting them.

2. NUISANCES.—Authority to abate nuisances does not include the power to declare that to be a nuisance which, in its nature or its situation or use, is not such.

3. WOODEN HOUSES.—Neither in its legal or general meaning does the word "nuisance" apply to wooden buildings, even in towns and cities.

4. MUNICIPAL CORPORATIONS can exercise those powers only which are expressly or impliedly conferred, subject to such regulations or restrictions as are annexed to the grant of such powers.

5. SAME.—Their powers discussed.

APPEAL from Grimes.    Tried below before the Hon. James R. Burnett.

The facts are stated in the opinion.

*R. V. Pye & John R. Kennard,* for appellants, cited Gabel *v.* Houston, 29 Tex., 335; Abbot's Dig., (of Municipal Corp.,) 493, 511, 514, and cases; Brady *v.* N. W. Ins. Co., 11 Mich., 425; Miller *v.* Burch, 32 Tex., 210; 2 Kent, 340; Slaughterhouse Cases, 16 Wall., 62; Vanderbilt *v.* Adams, 7 Cowen, 349; Roberts *v.* Ogle, 30 Ill., 459; City of Waco *v.* Powell, 32 Tex., 258; Wadleigh *v.* Gilman, 12 Me., 403; 1 Dill. on Mun. Corp., 430, and cases.

*Randolph & McKinney,* for appellee, cited Sedg. on Stat.

& Con. Law, 466; Cooley's Const. Lim., 192, 194, 195, 203; 2 Kent, 298; Beaty v. Lessee of Knowles, 4 Peters, 152; Miller v. Burch, 32 Tex., 210; Angel on Corp., ch. 2, sec. 6; 3 Bl. Com., 216; 4 Ib., 166; Hodges v. City of Buffalo, 2 Denio, 110; Burditt v. Swenson, 17 Tex., 502; Dirgan v. Waddell, 9 Ired., 245; Kirkman v. Handy, 11 Humph., 406; 1 Strange, 636.

GOULD, ASSOCIATE JUSTICE.—The appellee brought this suit to enjoin the enforcement of an ordinance of the city of Navasota establishing fire limits, declaring wooden buildings thereafter erected within these limits to be nuisances, and providing for the removal of such buildings and the punishment of parties erecting them. The injunction was granted, and, on the final hearing, was made perpetual, and from this judgment the city has prosecuted an appeal. Whether, under its charter, the city was empowered to pass such an ordinance, is the sole question presented for our consideration.

The charter contains no express grant of such power. It is claimed under the general grant of power in the first section of the charter, authorizing the city to "ordain and establish such acts, laws, regulations, and ordinances not inconsistent with the Constitution or laws of this State, as shall be needful for the government, interests, welfare, and good order of said body politic." It is also claimed under a clause conferring on the city council power, by ordinance, "to abate and remove nuisances, and to punish the authors thereof by penalties, fine, and imprisonment, and to define and declare what shall be nuisances." The form of the ordinance indicates that it was framed under this latter clause.

The clause of the charter just cited certainly does not convey an unlimited authority to declare that to be a nuisance which, "in its nature, or its situation, or use, is not such." (1 Dillon on Mun. Corp., sec. 308; Yates v. Milwaukee, 10 Wall., 498.)

Neither in its legal nor general meaning does the word

nuisance apply to wooden buildings, even in towns and cities. The erection and occupation of such buildings is an ordinary exercise of the property rights of the owner of the lands, and is far from falling within the legal definition of a nuisance, at common law. The power to prohibit such buildings in certain localities is statutory, and is a limitation on the ordinary rights of property. Whilst the legislative power to authorize such prohibitions is now conceded, the nature of the power is so high and the subjects themselves so far various that it seems not naturally embraced in the subordinate power to declare and abate nuisances. To so construe it would be to extend the grant of power to a subject not, we think, within the intention of the law-makers in the clause cited.

This conclusion is strengthened by reference to the former and existing general act, providing for the incorporation of towns and cities, and to numerous special acts of incorporation which show that these subjects—nuisances and fire limits—have usually been treated as distinct, and provided for by distinct and separate grants of power. (Paschal's Dig., arts. 5263, 5275, ; Laws of 1875, p. 130, sec. 64, p. 143, sec. 105; Spec. Laws of 1870, p. 72, &c.)

We are also of opinion that the general grant of power to establish ordinances needful for the welfare of the city did not authorize the passage of such ordinances as the one in question.

Municipal corporations can exercise those powers only "which are expressly or impliedly conferred, subject to such regulations or restrictions as are annexed to the grant." (Cooley on Const., 192.)

"The general disposition of the courts of this country has been to confine municipalities within the limits that a strict construction of the grants of powers in their charters will assign to them; thus applying substantially the same rule that is applied to charters of private corporations. The reasonable presumption is, that the State has granted, in

clear and unmistakable terms, all it has designed to grant."
(Cooley, 195.)

This presumption applies with undiminished force when
the power sought to be implied is one to limit those rights of
property which are secured to every citizen under the gene-
ral laws of the State. (Potter's Dwarris, p. 146.)

To infer the power to establish fire limits, from the gene-
ral terms used in this charter, would be to disregard the
rules of construction just cited, and would go far in the di-
rection of the opposite proposition—that specific grants of
power are unnecessary. If this general clause includes the
power claimed, it would seem difficult to place limits on its
meaning.

It is true that Judge Dillon, in his work on Municipal Cor-
porations, says: "Municipal corporations, with power to pro-
vide for the safety of their inhabitants, may prohibit the
throwing of heavy or dangerous articles from the upper
stories of buildings into the streets or open spaces near them,
where persons are in the habit of passing; and may establish
fire limits, and prevent erection therein of wooden buildings."
(1 Dillon, sec. 338.) Of the cases referred to in the note to this
section, Wadleigh v. Gilman, 12 Me., 403, is the only case
where it is decided that such a general grant of power em-
braces all necessary police regulations, and includes a power
to establish fire limits and prohibit wooden buildings.  In-
deed there is not among the cases cited (and it is proper to
remark that they are cited not on this point alone, but on
other points growing out of fire ordinances) any other, nor
have we found any other, unless it be one which we will now
refer to at length, where such an ordinance appears to have
been enacted without some specific legislative authority.
(Brady v. Ins. Co., 11 Mich., 425; Douglass v. Common-
wealth, 2 Rawle, 262; Respublica v. Duquet, 2 Yeates, 493;
Stewart v. Commonwealth, 10 Watts, 307; Vanderbilt v.
Adams, 7 Cowen, 349; 27 Conn., 332; 4 Conn., 65, 68.)

On the other hand, is the case of the Mayor of Hudson v.

Thorne and others, also referred to by Judge Dillon. The charter of that city "authorized the common council to pass such ordinances to remove or prevent the construction of any fire-place, hearth, chimney, stove, oven, boiler, kettle, or apparatus used in any house, building, manufactory or business, which might be dangerous in causing or promoting fires; to regulate or prevent the carrying on of manufactures dangerous in causing or promoting fires; to adopt and establish such regulations for the prevention or suppression of fires as might be necessary; and generally to make all such rules, regulations, by-laws, and ordinances for the good government of the city and the trade and commerce thereof as they might deem expedient, not repugnant to the Constitution and laws of the State." Chancellor Walworth says: "I am satisfied, however, that under the provisions of this charter, the Legislature never intended to give to the common council the power to restrict the erection of wooden or frame buildings within the city, or to limit the size of buildings which individuals should be permitted to erect on their own premises. And as the ordinance is an attempt to exercise such a power only, it is inoperative and void." (7 Paige, 261.)

The authorities cited certainly do not settle the question, and are not such as to justify us in adopting a construction which appears to be a departure from principle.

We are confirmed in our conclusions by the fact that the general law for the incorporation of towns which was in force when this charter was granted, contained the following provision: "In addition to such powers as are by this act vested in a board of aldermen of a town, a city council shall shall have power, on the written application of the owners of three fourths of every square, to prohibit the erection of any except brick, stone, or concrete buildings within the square." (Paschal's Dig., art. 5275.) It seems that not only was a specific grant of power deemed necessary, but that by the general law it was not granted to towns, but to cities only, and

to them only conditionally, and to be exercised at the request of a certain proportion of the property owners interested.

Whilst the general law now in force "regulating the incorporation of cities of one thousand inhabitants or over," enacted in 1875, contains no such limitations, it is specific and minute in its grant of power. Under neither statute was this important power left to be inferred from any general grant.

We of opinion that the ordinance of the city of Navasota was not authorized by its charter, and the judgment is accordingly affirmed.

AFFIRMED.