EX PARTE C. D. GRACE.

9   381
d34   11
34   108

1. MUNICIPAL LAW. — The chartered powers of municipalities are to be subjected to a strict construction, the presumption being that the State has explicitly granted all that it designed to grant.

2. SAME. — Among the powers conferred by charter on the city of B. were the general authority to make and enforce all ordinances needful to effectuate the powers conferred, and the special authority to "open, widen, extend, improve, vacate, or abolish streets." *Held*, that these powers do not authorize the municipality to compel citizens to work the streets, subject to fine for default; and, in view of the entire text of the charter, the city has not the authority to do so.

3. HABEAS CORPUS — CASE STATED. — Having refused to work the streets as required by the city ordinances, and having been arrested and held in custody by virtue of a warrant issued by the mayor in conformity with the ordinances, the appellant sued out *habeas corpus* to recover his liberty. This court, holding the ordinances in question to be *ultra vires*, illegal, and void, further holds that the appellant was not bound to await an adverse adjudication by the mayor and seek relief by appeal therefrom, but was entitled to relief by *habeas corpus.*

HABEAS CORPUS, on appeal from a judgment in chambers rendered by the Hon. T. B. Cox, County Judge of the county of Fannin.

A clear and comprehensive statement of the case will be found in the opinion.

*C. D. Grace*, in proper person, for the appellant.

*R. W. Campbell*, contra.

WINKLER, J. The relator, being a citizen of the city of Bonham, and belonging to the class of citizens generally liable to be called on to work the streets of the city under the city ordinance, and being warned to work said streets, declined to do so, and in consequence of said failure was arrested by the constable of the city on a warrant issued by the mayor, charging that the relator "did unlawfully fail and refuse to work on the streets of said city of Bonham, on the 14th, 15th, and 16th days of September, 1880;" and

being so in court, he sued out a writ of *habeas corpus* before the judge of the County Court, alleging in his petition that he is illegally restrained of his liberty, for the following reasons, in substance, as alleged in his petition: 1. That the charter of said city of Bonham confers no power upon the Common Council of said city to create and enforce any such ordinance as is pretended to be created by said Common Council and now attempted to be enforced by the mayor. 2. That the pretended act or ordinance of said Common Council upon which the pretended warrant is based and issued is totally illegal, unconstitutional, and void. Wherefore he prays to be discharged and set at liberty, freed from the duress and restraint complained of.

The county judge, on hearing the case in chambers, on October 15, 1880, made his judgment and order in the case as follows: "This cause came on to be heard, and, after hearing the evidence and law of the case, it is ordered by the court that C. D. Grace, the relator, be remanded to the custody of the marshal of the city of Bonham." To this order the relator excepted, and gave notice of appeal. The record before us presents the one single question for our consideration, to wit, the legal authority, under the charter of the city, of the City Council to enact the ordinances the relator is charged with violating; it having been proved that the relator was warned by the overseer to work on the streets on the days set forth in the warrant of arrest; that he was residing in the city, and was within the age prescribed by the city ordinance; and that he failed to comply with the notice requiring him to work the streets.

The charter of the city granted by the Legislature, as we find it set out in the statement of facts, confers on the City Council the power, among other things, "to make, pass, publish, and enforce all needful rules, resolutions, ordinances, and regulations, not inconsistent with the Constitution and laws of this State, to carry out the powers herein conferred on said corporation or the officers thereof."

Sect. 2, being an amendment and reënactment of a former law, provided that the mayor and Board of Aldermen of said city shall have full power and authority to make, pass, establish, and enforce such rules, regulations, provisions, and ordinances as may be necessary and proper for the preservation of the life, liberty, and property of the inhabitants of said city ; for the preservation of the public peace, order, decency, and morals of said city ; for the preservation, management, control, and disposition of the public property belonging to said city ; to *open, widen, extend, improve, vacate, or abolish streets, lanes, avenues, and alleys in said city;* to regulate weights and measures in said city, not inconsistent with the Constitution and laws of the United States and this State ; to license and tax occupations in said city, such as are taxable under the Constitution and laws of the State, and not to exceed the amount of State tax imposed in such cases ; to declare what are nuisances, and abate or remove the same ; to levy, assess, collect, and appropriate all general and special taxes on persons and property ;   *   *   *   to make penal laws and ordinances consistent with the laws of this State, and prescribe fines and imprisonment for violation of said penal ordinances, consistent with the laws of this State ;   *   *   *   to levy, assess, collect, and appropriate a general poll and *ad valorem* tax on all persons and property within the corporate limits of said city subject to taxation by the laws and Constitution of this State, for the purpose of paying the ordinary expenses of the city government, and to make the necessary ordinances to enforce the collection of the same ; *provided,* that said tax shall in no case exceed one-half of the State tax for the same year the same is levied ; and *provided further*, said tax shall not be levied oftener than once a year, and it shall constitute a fund for the payment of the ordinary expenses of said city, and be styled the general tax ; and shall have such other powers as are or may hereafter be conferred by the general laws of this State on incorporated cities and towns.

The city ordinances provide that the male citizens of the city between the ages of eighteen and forty-five years, with certain specified exceptions, shall be liable to work upon all public thoroughfares within the corporate limits of the city, not to exceed ten days in each year; and they make it the duty of the overseer, also provided for, to call out the persons liable to work, at any time when ordered so to do by the Common Council. They also prescribe the manner of giving notice, and the tool or implement to be used, and direct that the person who may fail shall be deemed guilty of a misdemeanor, and on conviction before the mayor shall be fined in the specified sum of seventy-five cents, and costs, for each day he shall fail to attend or refuse to work. It is noticeable in this connection that the authority conferred by the city charter in question is similar to the authority given to city councils over streets, alleys, etc., by general law. Rev. Stats., art. 375.

In aiming at a proper solution of the question presented by the record before us, it will be necessary that we look to the general laws and to the legislative charter given to the city of Bonham, in order to determine the scope and extent of the power given to the Common Council to enact laws and ordinances generally, and in order to determine specially whether or not the mayor and aldermen of the city of Bonham had authority to prescribe the ordinances set out in the transcript, to require of the male inhabitants of the city to work on the streets and thoroughfares of the city, and to provide for the trial and punishment of those who should fail to either perform in person the required labor or to furnish substitutes in their places, or pay a fine, in case of failure, for each day he should so fail after being properly notified. If this general law or the special act of the Legislature confers this authority, then the relator in the present case is not illegally restrained in his liberty, and the action of the county judge in remanding him into custody must be affirmed. If this authority be not there

found, then the proceedings instituted against him by the city authorities on the enforcement of these ordinances are without authority of law, and void, and the relator is entitled to be set at liberty.

After carefully examining the general and special statutes, we are of the opinion that, if this authority exists in the City Council at all, it can only be found in that portion of the charter granted by the Legislature wherein it is provided that the mayor and Board of Aldermen shall have power " to open, widen, extend, improve, vacate, or abolish streets, lanes, avenues, and alleys in said city." This seems to be the only grant of power over streets and thoroughfares in said city.

" It seems to be settled, at least in Texas, that municipal corporations can exercise those powers only which are expressly or implicitly conferred, subject to such regulations or restrictions as are annexed to the grant." Cooley's Const. Lim. 192; *Pye* v. *Peterson*, 45 Texas, 312. " The general disposition of the courts of this country has been to confine municipalities within the limits that a strict construction of the grants of power in their charters will assign to them, thus applying substantially the same rule that is applied to charters of private corporations. The reasonable presumption is that the State has granted, in clear and unmistakable terms, all it has designed to grant." Cooley's Const. Lim. 195; *Pye* v. *Peterson, supra*. It would be an unnecessary consumption of time to attempt to collate and endeavor to reconcile the various decisions, and the *dicta* to be found in reported decisions, upon the vexed question as to what a corporation may or may not do in a given state of facts. It will be found on investigation, we are of opinion, that in a large majority of cases the question turns upon the authority conferred by, or plainly inferable from, the charter discussed.

Looking, then, to the charter of the city for the grant of power to enact and enforce regulations on the subject of

public streets and thoroughfares, there cannot certainly be found any express authority conferred upon the Common Council to compel a citizen to work the streets for ten days in a year, or to furnish an able-bodied substitute, or pay in default a pecuniary fine, to be enforced by imprisonment. It is contended, in favor of the action of the court below, that, inasmuch as the charter authorizes the Council " to make, pass, publish, and enforce all needful rules, resolutions, ordinances, and regulations, not inconsistent with the Constitution and laws of the State, in order to carry out the powers herein conferred on said corporation or the officers thereof," therefore the authority may be inferred to pass the ordinance set out, with regard to the enforcement of manual labor on the streets.    To our minds the language is not susceptible of this construction; which, we are of opinion, would be a strained and unnatural construction, to say the least.    When we remember that the charter provides for the collection and disbursement of a poll-tax, and an *ad valorem* tax on property, as well as a limited occupation-tax upon the citizens residing within the corporate limits of the city, it would seem that if the Legislature had intended to place other burdens on the shoulders of its citizens, the right to do so would have been given in plain language, rather than left to be inferred or implied by construction from what is plainly stated in the charter.

The question whether the appellant can invoke the protection of the writ of *habeas corpus*, or whether he should have submitted to the ruling of the mayor and asserted his rights by appeal, is hardly before us for consideration.    If it were, we incline to the opinion that the solution would favor the appellant.    If the proceeding sought to be inquired into were one of regularity only, it could be reached by appeal after conviction, unless limited to an amount below the jurisdiction of this court, when the case would end with the County Court; but when the cause rests, not on mere irregularity, but on illegality predicable on radical defects, it

may be reached by *habeas corpus*.  *Perry* v. *The State*, 41 Texas, 490.  Illegality is properly predicable of radical defects only, and signifies that which is contrary to the *principles* of law.  Hurd on Habeas Corpus, 333; *Ex parte Scwartz*, 2 Texas Ct. App. 74.  The radical defect in the proceedings set on foot by the mayor against the appellant consists in the fact that the ordinances of the city were passed without lawful authority from the Legislature, and were not only irregular, but void.

Believing that the mayor and Board of Alderman of the city of Bonham derived no authority from the charter of the city to provide the city ordinances under which the relator was arrested, the judgment and order of the county judge remanding him to custody must be reversed; and because the primary proceedings were void, the relator, appellant here, is entitled to be discharged, and it is so now here ordered.

*Ordered accordingly.*