## CITY OF FORT WORTH v. LILLARD et al.*
### (No. 11330.)

(Court of Civil Appeals of Texas. Fort Worth. April 4, 1925. Rehearing Denied May 2, 1925.)

1. **Municipal corporations** ⬅⟹57—**Powers of municipality limited by charter.**

The power of a municipal corporation cannot exceed that conferred by charter, and all ordinances must be in subordination thereto.

2. **Municipal corporations** ⬅⟹57—**Acts beyond charter powers void.**

All acts done by municipal corporation beyond powers conferred on it by its charter are void.

3. **Municipal corporations** ⬅⟹58—**Doubts concerning power resolved against municipality.**

Fair and reasonable doubts concerning existence of power of municipal corporation are resolved against corporation and power denied.

4. **Municipal corporations** ⬅⟹703(1)—**Ordinance prohibiting operating vehicles for carriage of passengers without certificate of public necessity and convenience held invalid, because not passed by vote of two-thirds of council.**

Ordinance of city of Fort Worth, making right to use public streets for carrying of

passengers a privilege and unlawful, unless a certificate of public necessity and convenience has been granted by city council, which ordinance was not passed by two-thirds of city council composed of 9 members, as required by chapter 27, § 5, of the new charter nor even by two-thirds vote of commissioners and mayor acting under old city charter, *held* invalid, as vote by such body was prerequisite of validity of ordinance.

**5. Municipal corporations ⬤⟲48(2)—Ordinance regulating franchise for operation of vehicles carrying passengers held to "alter" existing ordinance in violation of new charter.**

New charter of city of Fort Worth (chapter 26, § 1), providing that all existing ordinances are to remain in force until "altered," amended or repealed by city council after new charter takes effect, thereby reserved to new city council power to "alter," amend, or repeal any existing ordinances, and ordinance passed by board of commissioners acting under old charter, which embraced entire subject of franchise for operating motor vehicles for carriage of passengers, was invalid as an addition and amendment to an existing ordinance which regulated operation of such vehicles.

Appeal from District Court, Tarrant County; H. S. Lattimore, Judge.

Injunction by Lee A. Lillard and others against the City of Fort Worth. From a judgment granting a temporary writ of injunction, defendant appeals. Affirmed.

R. E. Rouer and Gillis A. Johnson, both of Fort Worth, for appellant.

Mayer, Rowe & Brown, of Fort Worth, for appellees.

CONNER, C. J. This is an appeal by the city of Fort Worth from an order of the Honorable H. S. Lattimore, judge of the Ninety-Sixth district court, granting a temporary writ of injunction upon the petition of Lee A. Lillard, Pearl Rudd, and Robert Grozier, suing for themselves and in behalf of all others similarly situated, restraining the city and its mayor, Willard Burton, and its commissioners, John Alderman, Chester L. Jones, and J. C. Lord, from in anywise enforcing purported ordinance No. 10045, having the following enacting clause:

"An ordinance declaring the right to use the public streets, highways, alleys and thoroughfares of the city of Fort Worth for the purpose of carrying passengers for hire to be a privilege and unlawful, unless the public necessity and convenience does in fact require such use. And a certificate of public necessity and convenience has been granted by the city council of the city of Fort Worth, and a permit issued in pursuance thereof by the city secretary; classifying vehicles carrying passengers for hire into two classes, and defining the same; providing for the application for and the granting of such certificates and permits; declaring the operation of vehicles for the carriage of passengers in violation of this ordinance to be unlawful; fixing a penalty, and declaring an emergency."

A copy of the ordinance was attached to the petition. It was alleged, in substance, that the city of Fort Worth is a municipal corporation heretofore created, organized, existing, and operating under and by virtue of a special charter enacted and granted by the Legislature of the state of Texas, under which it operated until on, to wit, December 11, 1924, at which time the qualified voters resident within the boundaries of said municipality, at an election regularly and legally called for such purpose, under and by virtue of the provisions of the Constitution and the laws of the state of Texas, voted upon and adopted a charter for said city of Fort Worth, under which the city, as a municipal corporation, was at the time of the filing of the petition operating.

The ordinance in question is quite lengthy, consisting of some 11 sections, and covering approximately 6 pages of the transcript. In substance, it declares that the right to use the public streets, highways, alleys, and thoroughfares of the city for the purpose of carrying passengers for hire is a privilege, subject to the control and disposition of the city council "as herein provided," and that the privilege of operating a vehicle for the carriage of passengers over any such public street, highway, alley, or thoroughfare of the city shall not be granted to any person, partnership, association, or corporation, "except upon application thereof first made as hereinafter provided, and not then unless the public necessity and convenience shall in fact exist and require the granting of such privilege to such applicant in accordance with the terms and provisions" of the ordinance.

Section 2 of the ordinance describes or classifies the character of vehicles carrying passengers for hire which are included within the preceding section.

Section 3 declares it to be unlawful for any person, firm, corporation, association, partnership, or society, to run or operate, or cause to be run or operated, any vehicle for the transportation of passengers for hire, over any public "street, highway, alley, or thoroughfare of the city of Fort Worth, without a certificate of public necessity and convenience theretofore granted by an ordinance passed by two-thirds vote of the city council of the city of Fort Worth, and a permit issued in pursuance thereof by the city secretary." The section then describes the number, type, and passenger carrying capacity of the vehicles for which a certificate and permit is required; and declares that the city secretary shall refer such applications to the city council, which thereupon shall make such investigation of the public necessity and convenience for the operation of such motor vehicles as it may deem necessary, and, if such public necessity or convenience in fact exists, may grant such application either as applied for or with such modi-

fications, not in conflict with the provisions of the ordinance, as it may deem best, but shall refuse the same if the public necessity and convenience in fact does not require the operation of such vehicle or vehicles; and other provisions not thought to be necessary to state.

Sections 5, 6, and 7 declare that the operation of any vehicle carrying passengers for hire otherwise than as provided in the ordinance shall constitute a nuisance, and that persons violating the ordinance shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding $200, and that each day's violation of the ordinance shall constitute a separate offense.

Section 8 declares the ordinance to be cumulative of all other ordinances of the city not in direct conflict therewith. And section 9 defines the term "city council" as including "city council, board of commissioners, or other governing body of the city of Fort Worth, by whatever name it may be properly known or designated."

Section 10 provides that the holding or adjudication of any section, or portion thereof, to be invalid shall not affect the validity of any other section or portion of the ordinance.

The final section, section 11, declares the ordinance to constitute an emergency measure passed on the ground of urgent public need for the preservation of the peace, health, and safety of the inhabitants of the city, and shall be in force and effect from and after its passage and 5 days' publication.

The ordinance was signed by Willard Burton, mayor, attested by C. S. Snow, secretary, and approved as to form by R. E. Rouer, city attorney.

As stated in the beginning, the plaintiffs named sued for themselves and in behalf of some 20 others, also named, who, it was alleged, constitute the association, partnership, and joint enterprise known as the Red Ball State Line, under which name the plaintiffs operate and conduct a business of transporting passengers by means of motor cars, motor busses, or automobiles, for hire, to, from, and between Fort Worth and Dallas, and the intervening towns of Arlington, Handley, Grand Prairie, Arcadia Park, and Beverly Hill, as well as along and over the streets, highways, and thoroughfares of the city of Fort Worth, along and upon a definite route, as required by existing ordinances of said city; that the plaintiffs had been so engaged for more than a year prior to the filing of this petition, and had at all times and in all things complied with and conformed to all the laws, rules, and regulations of the city of Fort Worth and the state of Texas, governing their said business. The plaintiffs further alleged that in the course of the gradual change, development, and evolution in the transportation facilities of the country, and as a result of the construction of permanent highways, built of durable material upon uniform grades, and the automobile and other self-propelled vehicles operated by internal combustion engines, coming into general and universal use and employment throughout the country upon such highways as a means for the transportation of passengers and freight, the business of conveying and transporting passengers and freight by means of such automobiles, motor busses, and other similar vehicles had become general throughout the state of Texas and the nation, and had become and is being employed and utilized by many as a means of livelihood; that plaintiffs, in the conduct of their said business of conveying passengers, had invested in the necessary vehicles and equipment considerable sums of money, and at all times had operated and maintained high class conveyances and equipment; that during the period of their operation the business had been liberally patronized by residents of the cities and towns hereinbefore named, and by persons residing at points intermediate between the said towns and cities; and that there had grown up and now exists a large public demand and necessity for such means of transportation, and such demand for same arising and existing, among other things, by reason:

(a) Of the convenience of such facilities.

(b) Same affording a safe and rapid means of transit for the residents of said towns and cities named, and those residing at intermediate points between the same, by means of which they have been and are enabled to go to and from their residences and places of business, and to and from said cities and towns.

(c) Because of the 15-minute service maintained by plaintiffs, as well as their uniform rule to stop at any point intermediate between said cities and towns, or any of them; thereby enabling all such residents to secure transportation to or from any point between Fort Worth and Dallas, or to, from, and between any points between said cities and either of the other named towns, or any of said towns, on the quickest schedule available, and upon the most reasonable rates.

It was further alleged that said means of transportation, as exemplified by the record of service and the efficiency thereof, maintained by the plaintiffs during the time they have operated, is as reasonably safe as any other means of transportation afforded at this time, and can, in the future, with the exercise of the care and caution heretofore exercised by plaintiffs, continue to be as safe a means of transit to, from, and between the points above named, as any other means of transportation.

Plaintiffs' petition further sets out the grounds upon which it was alleged the ordinance in question was invalid and unreasonable, and averred, in effect, that no legal

body existed which would be authorized to pass upon and grant the privilege as specified in the ordinance, but nevertheless the petitioners were threatened with prosecution and punishment should they continue to operate under valid ordinances now in force. The allegations in these respects are quite lengthy, and will not be here set forth in detail. We think it sufficient to say that the petition attacked the ordinance as void on the several grounds which we shall hereinafter discuss. The petition was duly verified. The order for the temporary writ of injunction was entered without notice to the city and without hearing. From the order, the city has duly prosecuted an appeal without having filed below any answer or a motion to dissolve the writ. The questions presented are before us upon the undenied allegations of the petition, which hence, for the purposes of our determination, must be accepted as true.

As already noted, the city of Fort Worth, previous to December 11, 1924, was operating under a special charter granted by the Legislature of Texas on the 11th day of March, 1909. Under the Home Rule Amendment to the Constitution a new charter was adopted by the legal voters of the city on the 11th day of December, 1924. Each charter contains a provision requiring courts to take judicial cognizance of its provisions, and a determination of the validity of the ordinance in question has led us to consider the terms and legal effect of a number of parts in both the old and the new charter, as we shall hereinafter designate them.

[1-3] The power of a municipal corporation cannot exceed that conferred by the charter, and all ordinances must be in subordination thereto. Vosburg v. McCrary, 77 Tex. 568, 14 S. W. 195; Pye v. Peterson, 45 Tex. 312, 23 Am. Rep. 608; 1 Dillon on Corporations (4th Ed.) §§ 89–91. All acts done by a municipal corporation beyond the powers conferred upon it by its charter are void. Williams v. Davidson, 43 Tex. 1; Wright v. Victoria, 4 Tex. 375. Fair and reasonable doubt concerning the existence of the power of a municipal corporation is resolved by the courts against the corporation and the power denied. Brenham v. Brenham Water Co., 67 Tex. 542, 4 S. W. 143. Many authorities of like tenor and effect might be cited, but these rules are of such universal application in the determination of the validity of an ordinance that is in question that we think the foregoing authorities will be sufficient.

The vital question then is, Did authority exist for the passage of the ordinance under consideration?

From what has been stated, it is evident that the authority for the passage of the ordinance, if any, must be found in either one or both of the charters to which we have referred. By its terms the new charter was made to take effect for specified purposes, which will hereinafter be pointed out, on the date of its adoption. Section 39 of chapter 28 of the new charter, so far as we deem pertinent, reads:

"For the purpose of nominating and electing officers and exercising the powers of the city as provided herein, this charter shall take effect from the time of its approval by the electors of the city."

In the very nature of the subject, the legislative power of a municipal corporation is highly important, if not the most important power which a legislative or constitutional provision can commit to a municipality, for by its proper exercise all ordinances, rules, and regulations which govern its people are enacted and given force. The language, then, which we have quoted above from section 39, means, if it means anything, that an exercise of the legislative powers—i. e., the enactment of an ordinance, or ordinances—must be as "provided" in the new charter.

We think it must be said that the two charters cannot be coexistent in conflicting provisions, and that, under the first sentence of section 39, just quoted, all powers of the city, save those specially excepted, must be exercised under the new charter and as provided therein, and hence that the authority for the enactment of the new ordinance must be found in the new charter, which, by its terms, took effect on the 11th day of December, 1924, and not in the old charter.

The ordinance in question was evidently framed with a view of complying with chapter 27 of the new charter, which specifically relates to the subject of "franchises and public utilities." This chapter confers upon the "city council," which by other provisions of the charter is composed of 9 members, the power by ordinance to fix and regulate charges of water, gas, light, and other public utilities within the corporate limits of the city; denies the right to extend the life of any existing franchise beyond the term originally fixed for its termination, unless at a general or special election such extension is approved by a majority of the electors of the city; that all franchises shall be granted upon condition that the city shall have the right to fix and regulate the price for the service to be performed, and to purchase the property operated thereunder at any time after 10 years subsequent to the grant at the actual replacement value of the property less depreciation, and other provisions not pertinent to the question before us.

Section 5 of the chapter relates to the right to use the public streets, highways, alleys, and thoroughfares of the city. The latter paragraph of this section is particularly pertinent in the matter before us. It thus reads:

"The use of the said public streets, highways, alleys and thoroughfares of this city, which does not require the digging up or similar interference with said streets, alleys or

highways for the installation of equipment, appliances or appurtenances, to make the intended use possible, shall be treated and considered as a 'privilege,' subject to the control and disposition of the city council, and such privilege over and upon the said public streets, alleys, highways and thoroughfares of the city shall not be granted to any person or corporation excepting when public necessity and convenience may require such use and when given by ordinances passed by a two-thirds vote of the city council."

While the old charter gave to the board of commissioners provided for therein the power to regulate the use of its streets, we have no such provision as is pointed out in chapter 27 of the new charter, to which we have just called attention.

[4] It thus appears that, under the ordinance in question, for the first time in the charter history of the city, the use of its streets for purposes desired by the appellees in this case is designated as a "privilege," and that a privilege of this character cannot be granted to any person or corporation except when necessity and convenience may require such use, and when given by ordinance passed by a two-thirds vote of the city council. The ordinance in question was not passed by a vote of the city council but by a board of commissioners acting under the old charter; it was not passed by a two-thirds vote of the city council, composed of 9 members, or even by a two-thirds vote of the 5 commissioners and mayor, acting under the old charter. We are of the opinion that such vote by such a body was a prerequisite of the validity of the ordinance in question. In addition to the authorities herein before noted bearing upon this subject, we quote the following from 28 Cyc. p. 275:

"If the statute conferring a municipal power prescribes the manner in which it shall be exercised, this is generally mandatory and exclusive of other methods, so that any attempt to exercise it in a different manner will be void; and this rule is especially applicable where there are negative words in effect prohibiting the doing of the thing unless it is done in the manner prescribed."

[5] The closing sentence of the quotation just made is given particular force by reason of the fact that the new charter, as we think, contains negative words in effect prohibiting the enactment of the ordinance in question.

Section 1 of chapter 26 of the new charter, declares:

"All ordinances, resolutions, rules and regulations of the city of Fort Worth heretofore ordained, passed or enacted that are in force at the time this charter becomes effective, and which are not in conflict herewith, shall remain in full force and vigor, until altered, amended or repealed by the city council after this charter takes effect. Provided, that said ordinances, resolutions, rules and regulations have become in effect by the terms of the charter under which the same were enacted, and provided further that the same were valid and authorized by said charter."

The definition given in Webster's Unabridged Dictionary of the term "alter" is:

"To cause to be different in some respect; make some change in; vary in some degree, without making an entire change."

The same authority defines "amend" as:

"To change for the better by freeing from fault, vices, errors, or defects, as by supplying deficiencies; correct; reform."

A like meaning is given these terms in Black's Law Dictionary. In 36 Cyc. p. 1053, it is said:

"An amendment, as applied to statutes, means an alteration in the draft of a bill proposed or in a law already passed."

The appellees in this case alleged that they were engaged in operating their busses under existing ordinances with which, as well as with all rules and regulations relating to the subject, they had in all things complied; and it may be seen by reference to the case of Waid et al. v. City of Fort Worth (Tex. Civ. App.) )258 S. W. 1114, that the validity of an ordinance specifically relating to the use of streets by motor busses, enacted by the board of commissioners of the city under the old charter, was upheld. This ordinance prohibited the operation of motor busses along, across, and upon specified streets of the city. The prohibition did not extend to all of the streets and alleys as does the one under consideration, nor was the use of the streets permitted denominated a "privilege," nor under such ordinance was it required that the privilege of using any one or more of the streets should be formally applied for and shown to be a necessity and convenience. In other words, there was no restriction upon the use of the streets not specified in the ordinance. It seems plain to us that the ordinance in question embraces the entire subject of such franchise, and clearly constitutes an addition to, and an amendment of, a valid ordinance of the city, which, by the section we have just quoted, was to remain in force, and which by that section it is specifically declared shall remain in force "until altered, amended, or repealed by the city council after this charter takes effect." We think it is to be implied that in framing the new charter it was thought that existing valid ordinances, except as otherwise provided, were sufficient to properly maintain the peace, order, and protection of the citizens during the period of time intervening between the taking effect of the charter and the election and organization of the new city council. It seems evident that the intent of the framers of the new charter was to reserve to the new city council the power to alter, amend, or repeal any of the valid ordinances existing at the time the new charter took effect.

. We accordingly conclude that the ordinance attacked is invalid, and that the judgment of the court below should be in all things affirmed.