WILLIAM R. STOCKWELL v. STATE OF TEXAS ACTING THROUGH FRED W. DAVIS, COMMISSIONER OF AGRICULTURE.

No. 3234.    Decided May 12, 1920.

(221 S. W., 932.)

1.—Nuisance—Power to Abate—Administrative Officer—Constitutional Law.

Except in case of emergency threatening public calamity and presenting imminent exigency before which all private rights mus'. give way, the

Legislature cannot confer on its administrative officers the power to finally determine that property of a citizen, not so declared by statute, constitutes a nuisance which should be abated by its destruction. Their decision cannot be made conclusive. The owner is entitled to a judical determination of the question whether or not his property constitutes a nuisance. (Pp. 554, 556).

### 2.—Same—Citrus Canker—Case Stated.

Proceeding under article 4459, Rev. Stats., inspectors of the Department of Agriculture pronounced a hedge belonging to S. to be infected with citrus canker, a contagious disease destructive of citrus fruit trees, constituting it a nuisance requiring destruction. On appeal to the Commissioner of Agriculture he sustained the ruling of the inspectors. S. refusing to destroy the hedge or permit agents of the department to do so, the Commissioner sued in behalf of the State to enjoin him from interfering with them in destroying it. The answer of S. put in issue the facts as to the hedge constituting a nuisance requiring destruction. Demurrer to this was sustrained on the ground that the decision of the Commissioner was final. Held error. S. was entitled to a trial and judicial determination of the facts. (Pp. 552-557).

Error to the Court of Civil Appeals for the First District, in an appeal from Brazoria County.

The State, through Davis as Commissioner of Agriculture, sued Stockwell to enjoin him from interfering with the destruction of a certain citrus hedge by the agents of the Department. The State had judgment and Stockwell, appealing, obtained writ of error on affirmance of the judgment, 203 S. W., 109.

*Elmer P. Stockwell,* for plaintiff in error.—The Honorable Court of Civil Appeals erred in holding that the orders of the Commissioner as given in this case are due process of law and are final within the meaning of the Constitution providing for the right of trial by jury, and providing that private property shall not be taken without due process of law. Constitution of Texas, art. 1, sec. 19; art. 1, sec. 15; Constitution of the U. S., art. 14, sec. 1; City of Paris v. Tucker, 104 S. W., 1046; H. & T. C. Ry. Co. v. City of Dallas, 98 Texas, 415.

*Munson & Williams, W. A. Keeling,* Assistant Attorney-General, and *Wm. Burkhart,* County Attorney of Brazonia County, for defendant in error.—The court did not err in granting said injunction, and holding said article 4459 constitutional for the reason that said article does not violate article 1, section 17 of the Constitution of Texas, which provides that "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Chambers, County Judge, v. Gilbert, 42 S. W., 630; Maynard v. Freeman, 60 S. W., 334; Livingston v. Ellis Co., 68 S. W., 723; Louisiana State Board of Agriculture & Immigration v. Tanzmann, 140 La., 756; State of Conn. v. Main, 36 L. R. A., 623; 1 Ruling

Case Law, 790; Carstens v. De Sellems, 144 Pac., 934; Los Angeles Berry Growers Ass'n v. Huntley, 146 Pac., 373.

The court did not err in holding the decision of the Commissioner of Agriculture on appeal final, under the condition of the pleadings and the admissions of defendant, and the District Court could not go behind such decisions and review the facts. Article 4459 of Vernon's Sayles' Texas Civil Stats.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court. ·

The suit was by the State through the Commissioner of Agriculture to have declared as a nuisance and abated a certain citrus trifoliata hedge belonging to the defendant Stockwell and situated on his premises in Alvin, Texas, and to enjoin him from in any manner interfering with the destruction of the hedge by the Commissioner or his deputies or agents.

It was asserted in the petition that the citrus trees in the hedge were all badly infected with citrus canker, a disease alleged to be contagious and destructive to citrus fruit trees. that under the law it is the duty of the Commissioner to destroy all such trees found to be infected with citrus canker and thereby eradicate the disease so as to protect and save the uninfected trees, hedges and orchards within the State; that he had caused the defendant's hedge to be inspected by his deputies and assistants who were learned in the matter of citrus canker and other diseases of citrus fruit trees, and who found it to be badly infected with such canker. That the defendant was thereupon notified to destroy the hedge. That in the manner provided by law he appealed from the decision of the Commissioner's inspectors to the Commissioner, who heard the appeal, all parties at interest being present, and thereafter rendered his judgment sustaining his inspectors and ordering the hedge destroyed. That in pursuance of this order or judgment the Commissioner demanded of the defendant that he destroy his hedge, which the defendant refused to do or to permit the Commissioner's inspector to enter upon his premises for the purpose of destroying it.

It was further alleged that the hedge was of no value to the defendant and would die within a few years from the effect of the canker; and that its absolute destruction was the only way to suppress the disease and preserve other citrus trees and orchards from. its infection.

The defendant entered a general denial of all these allegations. He pleaded that the property on which the hedge was situated was his homestead and had been for many years. He denied that all the trees in the hedge were badly infected with citrus canker, though admitting that some of the twigs and foliage on some of the trees were so infected. He denied that other citrus trees and orchards were becoming infected from his trees, or that citrus canker could be communicated to other trees and orchards a great distance away. He

denied that his hedge constituted a nuisance, or that it was necessary to destroy it in order to eradicate the canker, alleging that such leaves and twigs on those of the trees that were infected with the canker could be pruned and by that means or proper spraying the canker be effectually controlled, rendering it wholly unnecessary to destroy his entire hedge. He further alleged in his answer that the destruction of his hedge would not eradicate citrus canker in the vicinity of Alvin nor appreciably affect its prevalence, in that it existed upon all citrus trees of every character, not only in the vicinity of Alvin, but in all the orange growing counties of the State, and for the further reason that many wild trees, shrubs, and plants were likewise infected with it, and were contiguous to all the farm lands in such counties. That the Commissioner and his inspectors and agents were making no effort to destroy it upon such wild trees, shrubs and plants, or upon all the citrus trees in orange growing counties.

He further alleged that the hedge was of great value to him, that it served the purpose of a fence and windbreak, and furnished seed from which the stock on which satsuma oranges are grafted, is grown. That the Commissioner in seeking the destruction of his hedge was making an exception of his property, in that he was not attempting to destroy the trees of other persons infected with the canker.

That on the hearing before the Commissioner that official openly assumed the attitude of a party adverse to the defendant; was unfair and partial and wholly disqualified to render a fair and impartial judgment, and was attempting to unjustly exercise an arbitrary authority.

He further denied that citrus canker was a seriously injurious tree or plant disease, and alleged that the trees in his hedge had never been injured by it to the extent that they were infected with it, but were in a healthy and vigorous condition, and had had a vigorous growth from year to year, and would continue to so grow and bear fruit to his profit.

He alleged that the action of the Commissioner was unreasonable and oppressive; that in the arbitrary exercise of his authority he was subjecting the defendant to discrimination, whereby he was being denied the equal protection of the laws and his property threatened with destruction without the due process of the law.

A demurrer to the answer, interposed by the plaintiff, was sustained, and the defendant denied any character of hearing on the facts. An injunction was thereupon granted in the terms prayed for by the Commissioner. On the defendant's appeal from this decree, it was affirmed by the honorable Court of Civil Appeals.

The statute under which the Commissioner acted and the trial court proceeded, is article 4459. It begins by declaring that no person shall knowingly or wilfully keep certain named fruit trees

affected with certain named contagious diseases, namely "yellows," "nematode galls," "crown galls" and "root rot," etc.; any tree, shrub or plant infected with "San Jose scale," or other insect pest dangerously injurious to or destructive of trees, shrubs or other plants; nor any orange or lemon trees, citrus stock, cape jasmines, or other trees, plants or shrubs infested with "white fly," "*or other injurious insect pests or contagious disease of citrus fruits.*"

Citrus canker is not specified in the article as a contagious disease of citrus fruits. If it falls within the condemnation of the statute, it is in virtue of the general clause italicized.

Every such tree, shrub or plant, the article continues, shall be "a public nuisance," which it shall be the duty of the Commissioner of Agriculture, or his representatives, to abate. If the Commissioner, or his inspectors, shall determine, upon inspection, that any such trees, etc., shall ·be destroyed, the owner, it is provided, shall be notified and thereupon it is required, that within ten days, he remove and burn them. If in the judgment the Commissioner, or his representatives, the trees, etc., can be treated with sufficient remedies, the owner is required to administer such treatment under the direction of the Commissioner. If the owner objects to the findings of the inspectors, he is permitted to appeal to the Commissioner. The Commissioner's decision on the appeal, it is provided, shall be final.

It will thus be seen that the statute authorizes the Commissioner to declare "any trees infested with (in the judgment of the Commissioner) injurious insect pests or contagious diseases of citrus fruits," a public nuisance, with the absolute power to summarily destroy them, there being, by the terms of the statute, no appeal beyond his decision. According to the statute, he has the unlimited power to determine that any insects found by his inspectors upon trees are "injurious insect pests," or any condition found in trees "a contagious disease of citrus fruits," and to require that such trees be destroyed, the owner having no alternative but to submit to his final decision. The trial court denied the defendant a hearing evidently upon the theory that it was competent for the Legislature to invest the Commissioner with such unlimited authority, and this view was affirmed by the Court of Civil Appeals. In our opinion the Commissioner could not be clothed with any such arbitrary power.

The State, in the exercise of its public power, may denominate certain things to be public nuisances, and because of their having that character provide for their summary abatement. This power is limited to delaring only those things to be such nuisances which are so in fact, since even the State may not denounce that as a nuisance which is not in fact. Tiedeman's Limitation of Police Power, section 122a. The police power is subordinate to the Constitution, as is every other power of the government. Where the Legislature has found and defined as expressed in its statute, a certain thing to be a public nuisance, only in clear cases would courts

be warranted in going behind its findings and determining the contrary. But whether something not defined as a public nuisance by the statute is such under its general terms, is undoubtedly a judicial question.

The State may also remit to such agencies as health boards, or other proper administrative officers, the authority of determining whether other things constitute public nuisances, with the power to abate them. But where this is done, the determination of such boards or officers is not conclusive and cannot be made so, unless it be with respect to something having the nature of a public emergency, threatening public calamity, and presenting an imminent and controlling exigency before which, of necessity, all private rights must immediately give way. If this were not true, all property would be at the uncontrolled will of temporary administrative authorities, exercising, not judicial powers, but purely executive powers. The result would be to subject the citizen's property solely to executive authority, putting it beyond the protection of the courts, and depriving the courts of their essential power of determining what, under the written law, is lawful and what is not—declaring the law of the land—and adjudging property rights accordingly.

In speaking of the assertion that the declaring by such administrative authorities of certain things, not presenting a public emergency, to be public nuisances, must be accepted as final and conclusive, Judge Miller, in Yates v. Milwaukee, 10 Wallace, 497, characterized it as " a doctrine not to be tolerated in this country."

Judge Cooley says this upon the subject, citing numerous authorities:

"Whether any particular thing or act is or is not permitted by the law of the State must always by a judicial question, and therefore the question of what is and what is not a public nuisance must be judicial, and it is not competent to delegate it to the local legislative or administrative boards." Cooley's Constitutional Limitations, p. 742 note.

In Wood on Nuisances, section 744, this is announced with respect to conferring such final authority on municipalities—being equally applicable where the agency for the exercise of the authority is an administrative officer:

"It would, indeed, be a dangerous power to repose in municipal corporations to permit them to declare, by ordinance or otherwise, anything a nuisance, which the caprice or interests of those having control of its government might see fit to outlaw, without being responsible for all the consequences, and, even if such power is expressly given by the legislature, it is utterly inoperative and void, unless the thing is in fact a nuisance, or was created or erected after the passage of the ordinance, and in defiance of it. . . .

"Therefore. except in cases of great public emergency, when the emergency may safely be regarded as so strong as to justify

extraordinary measures upon the ground of paramount necessity, or when the use of property complained of is so clearly a nuisance as to leave no room for doubt upon the subject, it is the better course to secure an adjudication from the courts before proceeding to abate it."

Other authorities are People v. Board of Health, 140 N. Y., 1, 37 Am. St. Rep., 522, 23 L. R. A., 481, 35 N. E., 320; Hutton v. City of Camden, 10 Vroom, 122 (39 N. J. Law), 23 Am. Rep., 203; First Natl. Bank of Mt. Vernon v. Sarlls, 129 Ind., 201, 13 L. R. A., 421, 28 Am. St. Rep., 185, 28 N. E., 434; Tiedeman's Limitations of Police Power, sec. 122a.

Viewing the powers given the Commissioner by this statute and his attempted exercise of them here, the inquiry naturally arises as to what are the rights of the defendant if the Commissioner was mistaken in his judgment that citrus canker was a contagious plant disease, destructive of citrus fruits, or as to its being necessary to destroy, for its eradication, all of the trees in the defendant's hedge. The Legislature has not undertaken to define it as such a disease or to denounce trees infected with it as a public nuisance. If the defendant's trees, though so infected only to the slight extent claimed by him, are a public nuisance under the statute, they are such as the result merely of the Commissioner's decision. He had no right to so determine unless it was a fact. If it was not a fact, his judgment was wrong, and the defendant's property should not be destroyed under it.

With the Legislature not having assumed to denounce trees infected with citrus canker as a public nuisance, no court would be warranted in holding, without proof, that they were plainly such a nuisance. What reason, then, is there for holding that the decision of the Commissioner—a purely administrative and not a judicial officer, with no authority to adjudge property rights—shall be held final and absolute when sought to be enforced for the destruction of the property of a citizen, in the face of a challenge of the facts as presented here by the defendant's pleading? If justifiable at all in this case, it could only be on account of some pressing public emergency caused by the condition of these trees, making it necessary for the safety of the public that the Commissioner's decision be held inviolate and the trees be immediately destroyed.

We decline to hold that any such emergency was presented. It is wholly unreasonable that the trees of this one hedge threatened a general pestilence for all the citrus fruit trees in that vicinity.

Under the contest made by his pleading, before the property of the defendant could be summarily destroyed; he was entitled to a judicial hearing and decision as to whether it ought to be destroyed. As applied to such a case, nothing less would amount to due process of law, without which the Bill of Rights declares no citizen shall be deprived of his property.

The judgments of the Courts of Civil Appeals and District Court are reversed and the case remanded to the District Court for hearing on the facts.

Opinion delivered May 12, 1920.

MR. JUSTICE HAWKINS delivered the following concurring opinion.

The conclusions of law set forth in the foregoing opinion, applying constitutional limitations upon legislative authority and upholding the right of this property owner to a hearing, in a judicial tribunal, on the facts, in advance of the destruction of his property, have my hearty concurrence. But I do not concur in the declaration that "It is wholly unreasonable that the trees of this one hedge threatened a general pestilence for all the citrus fruit trees in that vicinity."

That expression serves no useful purpose. The reasoning of the opinion, resulting in said conclusions of law, is complete without it. The controlling thought in relation to the lack of proper showing of acute danger or imminency of such general pestilence is strongly stated in the next preceding sentence: "We decline to hold that any such emergency was presented."

It will be observed that said first quoted declaration, standing alone, is not restricted to and does not even involve the question concerning the imminency, or acute danger in point of time, of said alleged general pestilence. Said declaration carries no express or necessarily implied reference to any emergency. Consequently that declaration, considered apart from other portions of the opinion, reasonably may be construed and understood to be of general import, and as asserting, broadly, that in the opinion of this court, and as a matter of law, it is wholly unreasonable to contend that the diseased condition of trees in said hedge threatens any general pestilence, (whether near or remote in time), for other citrus fruit trees in that vicinity.

In that sense said declaration would constitute an invasion by this court of the province and functions of the trial court, or jury, in relation to an untrammeled determination, in the first instance, of the facts, and would not be in harmony with the order of this court remanding the cause to the trial court for proper ascertainment, by such judicial tribunal, of the material facts, which may or may not support a decree of court abating the alleged nuisance.

My objections to said declaration are not sufficiently answered by the suggestion that its meaning and effect are brought out and controlled by other portions of the opinon in which it is embodied. That though may prove helpful in future; but it should not presently prevent elimination or modification of said declaration concerning an issue of fact.

Opinion filed May 14, 1920.