**W. C. HARMON, Appellant,**

v.

**SEARS, ROEBUCK & COMPANY et al.,**
**Appellees.**

**No. 6145.**

Court of Civil Appeals of Texas.
Beaumont.
April 9, 1959.

Rehearing Denied May 6, 1959.

Adams & Browne, Beaumont, for appellant.

Orgain, Bell & Tucker, Beaumont, for appellees.

ANDERSON, Chief Justice.

This is a personal-injury damage suit in which appellant W. C. Harmon, as plaintiff in the trial court, sued Sears, Roebuck & Company (hereinafter referred to as Sears) and O. J. Hulin, a Sears employee. Trial was to a jury, but a motion by the defendants for an instructed verdict was granted at the close of the plaintiff's direct evidence. The propriety of the court's action in directing a verdict and in rendering judgment thereon in favor of the defendants is the only matter before us for review.

Appellant claims to have been injured during the afternoon of March 11, 1955. He was working for Sears at the time and was in the course of his employment. He was working in the company's warehouse at Port Arthur, Texas. His efforts to lift or move a heavy rug are alleged to have resulted in his having incurred both an inguinal hernia and a back injury.

It was the second time appellant had been injured while working for the same employer. Upon the former occasion, or October 4, 1951, he suffered rather severe injuries which left him to some extent permanently crippled. The injuries were to a foot and to his legs. In June, 1952, at which time he was still using crutches, he settled with Sears whatever claim for damages he may have had against the latter as a result of those injuries and returned to work. He was assured at that time that Sears would continue to employ him and would assign him only light work. He was paid only eight hundred dollars in the settlement, but Sears had continued to pay him his wages and had paid his medical and hospital bills.

Appellant claims to have been last injured when he unexpectedly encountered the heavy rug among what he had assumed were light rugs only. He "jerked" on one

end of the rug, he said, and was injured when the rug failed to respond as expected. He was engaged at the time in placing certain markings upon a number of rugs which were separately rolled and wrapped and which were stacked two and three deep in a stall near the front of the warehouse. In order that the markings might be placed on the wrappers at the desired locations, it was necessary that most of the rugs be moved and turned. Believing himself to be confronted with only light rugs, appellant was making no preliminary tests for weight before attempting to lift or move them. He claims to have been more or less rhythmically seizing the rugs and tossing them aside. In the process, he grasped the one he could not lift.

It was customary in the warehouse to separate light and heavy rugs as they came in, and then to store the light ones in one area, the heavy ones in another. The rugs upon which appellant was working were in an area where normally only light rugs were kept, hence his assumption that they were all of light weight. He said he had never before encountered a heavy rug where the one was that caused his injuries.

Appellant had neither seen the rug placed in the stall nor been advised that it was there. Moreover, the rug bore no markings to distinguish it from the others or to give notice of its weight, and its wrapper was similar in appearance to those that encased the other rugs. The rolls formed by the rugs differed considerably in their respective lengths and diameters, it is true, but it seems that this was not necessarily indicative of substantial differences between their respective weights, since the rugs were not all of one texture.

The rugs had been brought to the warehouse and had been handled throughout by Sears' employes. Defendant O. J. Hulin was foreman or supervisor of such of the employes as worked inside the warehouse, and was at liberty to direct placement of the rugs, which accounts for his having been made a party to the suit. There is, how-

ever, no evidence to show that he in fact actually directed placement of the rugs on which appellant was working or that he had actual knowledge that the heavy rug was among them.

In his trial petition, the plaintiff charged the defendants with having been negligent in eight respects, but not all of those allegations are pursued on appeal. Appellant has, however, brought forward twenty-two points of error which present different aspects of three main contentions. The general import of the points is that special issues as to negligence and proximate cause should have been submitted to the jury with reference to the alleged conduct of the defendants in each of the following respects: (1) In placing the heavy rug among the light rugs, without distinguishing it in some manner, and without otherwise apprising appellant of its presence there. (2) In violating a long-established custom of keeping light and heavy rugs segregated and of storing only light rugs in the area where appellant was working. (3) In placing appellant in a position of having to do heavy work, knowing of his impaired physical condition, and despite Sears' agreement not to require him to do or to attempt heavy work.

■ Proof that the custom of storing light and heavy rugs separately and in different areas of the warehouse had been violated did not, in and of itself, raise an issue as to negligence. A breach of duty, which is the essence of negligence, is not to be inferred merely from the breach of custom, because the custom does not itself appear to have been grounded in or associated with any duty the defendants owed the plaintiff. Insofar as the record discloses, the custom was merely one of convenience in handling and storing the rugs, not one designed to eliminate or minimize any real or fancied danger to Sears' employes from commingling light and heavy rugs. And since the commingling of light and heavy rugs does not strike us as being something inherently dangerous, we are of the opinion

that the custom, considered as an isolated matter, was not one the defendants were under a duty to continue or to keep inviolate. Consequently, and as previously stated, the breach of it, standing alone, is no evidence of a breach of duty, hence no evidence of negligence.

If the custom had been a safety measure, a different ruling might be necessary: Hubb Diggs Company v. Bell, Tex.Com. App., 1 S.W.2d 575; Kuemmel v. Vradenburg, Tex.Civ.App., 239 S.W.2d 869; 2 Harper and James, Law of Torts, sec. 17.3, p. 981; 30B Tex.Jur. 192—Negligence, sec. 20. But since it was not, it is of consequence only as it bears upon whether the defendants were under a duty to give some manner of warning or notice of the heavy rug's presence among the light rugs.

■ Appellant's impaired physical condition as a result of his previous injuries is likewise of importance only as it bears upon the same matter; because, even under the rule announced in McCorstin v. Mayfield, Tex.Civ.App., 274 S.W.2d 874, 878, his physical condition is of significance only as it affects the degree of care appellees were obliged to exercise for his safety, and because it is only through having failed to notify him that the heavy rug was among the light ones, or through having created the situation in which he unexpectedly encountered the heavy rug, that appellees can be said to have placed appellant in a position of having to do heavy work. As a consequence, such of appellant's points of error as appertain to the first and third grounds of alleged negligence above mentioned present essentially the same problem: that of whether, all of the facts and circumstances considered, including the custom and appellant's impaired physical condition, a special issue as to negligence should have been submitted to the jury with reference to appellees' failure to give appellant any manner of notice that the heavy rug was where it was.

That problem is presently to be dealt with, but we first add these, perhaps superfluous, facts: It was of his own volition, not at the direction of appellees, that appellant—who was, he admitted, rather much his own taskmaster—undertook to mark the rugs. Moreover, he was not being directly supervised in his work by appellee Hulin or any other Sears vice-principal. In fact, there is no evidence to show that Hulin or any other Sears vice-principal knew that he (appellant) was engaged in the task or knew in advance that he was going to engage in it. There is, however, evidence from which to infer that appellees reasonably should have anticipated that he might or would likely undertake the task, though it was not one that inevitably must have fallen to his lot.

■ In urging that appellees were under a duty to distinguish the heavy rug or to give notice otherwise of its presence among the light rugs, appellant largely relies upon the well-established principle that a master is duty bound to warn even a mature and experienced workman of latent and abnormal dangers of which the master is aware but the workman is not. See, for an exposition of the rule, 29 Tex.Jur., Master and Servant, sec. 88, p. 157; 35 Am.Jur., Master and Servant, sec. 145, p. 575. Appellees deny, of course, that a latent and abnormal danger was presented by the situation and contend that the case is ruled by the principle that normally a master is not liable in damages for an injury that is sustained by his servant through over-exertion in the performance of a task the servant has voluntarily undertaken. Shumake v. Great Atlantic & Pacific Tea Co., Tex.Civ. App., 255 S.W.2d 949; Great Atlantic & Pacific Tea Co. v. Evans, 142 Tex. 1, 175 S.W.2d 249; Western Union Telegraph Co. v. Coker, 146 Tex. 190, 204 S.W.2d 977; Hines v. Ross, Tex.Civ.App., 230 S.W. 1066.

If it were not for the warehouse custom and the fact that appellant was already crippled, the case clearly would be ruled by the cases last cited, but those two circumstances keep it from fitting neatly into the

pattern of those authorities. At the same time, however, the case does not fit neatly into the rule on which appellant relies, because, as previously stated, there was nothing inherently dangerous in the situation that prevailed. It is more or less necessary, therefore, that we resort to basic principles and test appellees' duty by the test that was applied in Collins v. Pecos & Northern Texas Ry. Co., 110 Tex. 577, 212 S.W. 477, 222 S.W. 156. In other words, it is necessary that we decide whether or not there is room for reasonable minds to differ about whether the appellees reasonably should have anticipated or foreseen that appellant or another would probably suffer injury as a proximate result of the situation and of their failure to give notice of it.

■ The case is undoubtedly near the borderline, but we have concluded that it cannot justifiably be said that appellees should have been possessed of such foresight. They were therefore under no duty to notify appellant of the situation and were not negligent in failing to do so. There was no occasion for them to anticipate that appellant would apply force to the rugs beyond what was commensurate with the rugs' supposed weights, and had appellant been doing no more than that, he would not have injured himself when he came to the heavy rug. Certainly they were not re-quired to anticipate that appellant would, as he pled he did, apply his "full strength" to the rug. If anything, they were fully justified in assuming that he would not undertake any lifting job with abandon. Not only did his physical condition dictate caution on his part, but he had been instructed—in fact, was working under standing orders—to lift nothing that was heavy. Moreover, his methods of work and the place at which he worked were matters of his own discretion. Even though he was crippled, therefore, we are of the opinion that the ordinarily prudent person would not have anticipated injury to him in the circumstances.

Appellant has cited and in part relies upon the following cases: Gulf, C. & S. F. Ry. Co. v. Smith, Tex.Civ.App., 148 S.W. 820; Collins v. Pecos & N. T. Ry. Co., 110 Tex. 557, 212 S.W. 477, 222 S.W. 156; Mackay Telegraph-Cable Co. v. Armstrong, Tex.Civ.App., 241 S.W. 795. But we think the cases are not in point on the facts. A foreign substance (cresote), not mere weight, was a prime factor in each of the first two cases, and specific instructions and representations, plus an excessive weight descending from a height, were factors in the last case.

No reversible error appearing, the judgment of the trial court is affirmed.