IN THE SUPREME COURT OF TEXAS
 
════════════
No. 09-0257
════════════
 
City of Dallas, 
Petitioner,
 
v.
 
Heather Stewart, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Fifth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued February 
16, 2010
 
 
            
Justice Guzman, joined by 
Justice Wainwright, Justice Green, 
and Justice Johnson, 
dissenting.
 
            
The upsurge of abandoned buildings caused by the subprime mortgage 
debacle and the recent recession is well known, as are the difficulties it has 
caused for cities.[1] Abandoned, vandalized, dangerous 
buildings constitute a major threat to the safety and vitality of entire 
neighborhoods.[2] The Legislature has enacted a 
comprehensive statutory scheme enabling cities to address this complex problem. 
Central to that scheme, summary nuisance abatement is a crucial, front-line tool 
for cities to deal with an otherwise overwhelming crisis.[3]
            
Today, the Court holds that “substantial evidence review of a nuisance 
determination resulting in a home’s demolition does not sufficiently protect a 
person’s rights under Article I, Section 17 of the Texas Constitution,” and thus 
concludes that a party whose real property has been determined a nuisance is 
entitled to an absolute right to de novo judicial review of the underlying 
nuisance determination made by an administrative board when the person alleges a 
taking. By doing so, the Court misses the crux of the constitutional issue here: 
do the procedures created by the Legislature for abatement of urban nuisances 
violate the due process rights of property owners? Our nuisance precedents 
establish that due process does not necessitate a de novo judicial determination 
that a condition is a nuisance if the Legislature has both (1) properly declared 
that the condition in question is a nuisance and provided for its summary 
abatement, and (2) specified a different standard of review of such an abatement. Here, the Legislature has done both. Moreover, 
the Court’s justifications for requiring de novo review are founded on 
misinterpretations of the precedents of both this Court and the United States 
Supreme Court. Accordingly, I would reverse the court of appeals’ judgment, and 
give preclusive effect over the property owner’s takings claim to the 
administrative board’s finding that the house was a nuisance, as confirmed on 
substantial evidence review by the trial court. I therefore respectfully 
dissent.
            
I. Proper Abatement of a Public Nuisance Does Not Constitute a 
Taking
            
A. Due Process
            
 Although the Court rushes to apply the Takings Clause, the correct 
inquiry is whether there was proper abatement of a public nuisance, consonant 
with due process. As the Supreme Court has explained, proper abatement of a 
public nuisance does not constitute a taking. See Lucas v. S.C. Coastal 
Council, 505 U.S. 1003, 1029 (1992); Samuels v. McCurdy, 267 U.S. 
188, 196 (1925) (“The exercise of the police power by the destruction of 
property which is itself a public nuisance . . . is very 
different from taking property for public use, or from depriving a person of his 
property without due process of law. In the one case, a nuisance only is abated; 
in the other, unoffending property is taken away from an innocent owner.”). Due 
process distinguishes proper abatement of a nuisance from the improper 
deprivation of property. See Samuels, 267 U.S. at 196; Crossman v. 
City of Galveston, 247 S.W. 810, 813 (Tex. 1923) (invalidating on due 
process grounds an ordinance that made city commissioners’ nuisance finding 
final); Stockwell v. State, 221 S.W. 
932, 935 (Tex. 1920) (concluding that judicial review of administrative 
determination of what constitutes a nuisance is required because “nothing less 
would amount to due process of law, without which the Bill of Rights declares no 
citizen shall be deprived of his property”); Bielecki v. City of Port Arthur, 12 S.W.2d 
976, 978 (Tex. Comm’n App. 1929, judgm’t adopted) (reasoning, on review of an ordinance 
declaring that all dance halls located within 150 feet of residences were 
nuisances, that “denial of the right of a citizen to so use his property is a 
deprivation of the property itself, hence falls within the protection afforded 
by the due process clauses of both State and Federal Constitutions”).
            
Due process is a flexible concept, and its precise requirements depend on 
the particular situation in question.[4] Gilbert v. Homar, 520 U.S. 924, 930 (1997). In weighing a 
due process question, we must determine whether the claimant has a property 
interest requiring protection, and, if so, what process is due. Univ. of Tex. 
Med. Sch. at Houston v. Than, 901 S.W.2d 926, 929 
(Tex. 1995). Here, Heather Stewart had a property interest requiring 
protection—the demolished house. The only remaining issue under these facts is 
what process did she have a right to—if the procedure 
utilized to find that Stewart’s house was a nuisance afforded her due process, 
then as a matter of law there cannot have been a taking. See Samuels, 267 
U.S. at 196. In this case, the only part of the process afforded to Stewart that 
she challenges is the Legislature’s determination that review of the Dallas 
Urban Rehabilitation Standards Board’s (the Board) nuisance finding is governed 
by the substantial evidence rule. See Tex. Loc. Gov’t Code § 214.0012(f).
            
B. The Legislature’s Authority to Abate 
Nuisances
            
For over a century, this Court has recognized the Legislature’s authority 
to determine that a condition is a nuisance, and to provide for its summary 
abatement. As far back as 1876, we explained that the Legislature could declare 
that wooden buildings are nuisances under certain circumstances, and could so 
authorize their abatement. See Pye v. Peterson, 
45 Tex. 312, 313–14 (1876) (holding that a city could not treat wooden buildings 
as nuisances absent a specific grant of such authority from the Legislature). 
This understanding is consistently echoed in our subsequent decisions. See Crossman, 247 S.W. at 812; Stockwell, 221 S.W. at 934 (“The State, in the exercise 
of its public power, may denominate certain things to be public nuisances, and 
because of their having that character provide for their summary 
abatement.”).
            
Consequently, we have long recognized that the Legislature, pursuant to 
its authority to declare and abate nuisances, can confer to agencies or 
municipalities (by statute or grant of authority, as in a municipal charter) the 
ability to abate a specified nuisance, as defined by the legislative grant. 
See Crossman, 247 S.W. at 812; Pye, 45 Tex. at 314 (noting 
that the Legislature has the power to authorize municipalities to prohibit 
wooden buildings as nuisances). There are, however, limits to 
the Legislature’s authority.
            
First, the Legislature cannot declare something a nuisance that is not so 
in fact. City of Houston v. Lurie, 224 S.W.2d 871, 874 (Tex. 1949) 
(“‘This power is limited to declaring only those things to be such nuisances 
which are so in fact, since even the State may not denounce that as a 
nuisance which is not in fact.’” (quoting 
Crossman, 247 S.W. at 814)); Crossman, 247 S.W. at 812 (“Not even 
the Legislature can declare that a nuisance which is not so in fact.”). A 
“nuisance in fact” is a condition that “endangers the public health, public 
safety, public welfare, or offends the public morals.” State v. Spartan’s Indus., Inc., 447 S.W.2d 407, 413 
(Tex. 1969). It is an otherwise unoffending condition that becomes a 
nuisance “by reason of its circumstances or surroundings.” 54 
Tex. Jur. 3d Nuisances § 5 
(2010). In other words, the Legislature may not declare a 
condition to be a nuisance that, by reason of its circumstances, does not 
endanger public health, safety, welfare, or morals.
            
Second, the Legislature cannot delegate an open-ended authority to define 
nuisances to agencies or municipalities; rather, in authorizing abatement, the 
Legislature itself must define the nuisance in question. See City of Texarkana v. Reagan, 247 S.W. 816, 817 (Tex. 
1923); Stockwell, 221 S.W. at 
934. That grant is further subject to a due process requirement of 
judicial appeal when an agency or municipality acts under such legislative 
authorization. See Crossman, 247 S.W. at 813; Stockwell, 221 S.W. at 935; see also Brazosport Sav. & Loan Ass’n v. Am. Sav. & Loan Ass’n, 342 S.W.2d 747, 
750–51 (Tex. 1961).
            
The Court concludes that only a court is competent to ultimately 
determine whether a building is a nuisance, and that any such determination by 
an agency is always subject to de novo review, despite a legislative 
determination that the substantial evidence rule should apply. Though I agree 
with the Court that a nuisance determination is generally “a justiciable question,” Crossman, 247 S.W. at 813, our 
precedents do not require de novo judicial determination in every case of this 
nature in order to satisfy due process. A survey of our precedents in this area 
instead demonstrates that de novo review is not required if the 
Legislature has both (1) properly defined the nuisance and authorized its 
abatement, and (2) provided for a different standard of review of such an abatement.
            
In Stockwell, the commissioner of 
agriculture did not merely determine that the particular hedge in question was a 
nuisance; instead, he determined that the type of citrus disease 
infecting the region was a nuisance under the general, catch-all provision of 
the statute in question. See Stockwell, 221 
S.W. at 934. In other words, the commissioner effectively set the boundaries of 
his own authority by defining for himself what constituted a nuisance. See 
id. We held that Stockwell had a right to a 
judicial determination of whether citrus canker was a nuisance because the 
Legislature had not defined it as one, not because that right exists always and 
in every circumstance.[5] See id. at 935.
            
Similar issues confronted this Court in Crossman. The principal 
due process defect in that case was that the municipality lacked authorization 
from the Legislature to abate the type of nuisance in question. See 
Crossman, 247 S.W. at 811–12. Specifically, the Legislature, through the 
city’s charter, had defined and authorized the abatement of wooden buildings 
constituting a fire hazard, but had not authorized the abatement of buildings 
that were merely dilapidated. Id. Accordingly, we held that a city 
ordinance, purporting to authorize the abatement of dilapidated buildings, was 
invalid for exceeding the authority given to the city by the Legislature. Id. at 812.
            
In Reagan, we invalidated another city ordinance, holding that 
“this ordinance, in so far as it makes final the orders of the city council 
declaring the building a nuisance . . . is void.” Reagan, 
247 S.W. at 817. Once again, the municipality in question lacked proper 
legislative authorization defining the nuisance in question. See id. 
at 816 (noting that the city council was 
purportedly “authorized by its charter to define and abate nuisances,” 
and questioning the validity of the charter accordingly) (emphasis added).
            
Finally, in Lurie, we twice recognized the Legislature’s authority 
to declare a condition to be a nuisance. Lurie, 224 S.W.2d at 875 (noting 
that judicial determination that a condition is a nuisance is required unless it 
is “property . . . within the class 
designated and condemned by statute . . . as a nuisance”); 
id. at 877 (“[U]nless property is of the 
class condemned by statute . . . as a nuisance, the 
question whether it is in fact a nuisance is for judicial determination.”) 
(emphasis added). We also construed—without any doubts 
as to its validity—the specific statute the Legislature had enacted pursuant to 
that power, authorizing the abatement of defined nuisances: “dangerous or 
dilapidated buildings or buildings [constituting a] fire hazard.” Id. at 874. We observed: “‘The State, in the exercise 
of its public power, may denominate certain things to be public nuisances, and 
because of their having that character provide for their summary abatement.’” 
Id. (quoting Crossman, 247 S.W. at 
814).
            
Thus, although Lurie goes on to state there is a right to judicial 
determination of whether a property is a nuisance, that right only arises when 
the Legislature or common law has not already defined the class of things in 
question as a nuisance. Id. at 875, 877. 
Of course, where the Legislature has made such a determination, due process 
still guarantees a qualified judicial review, but does not require that the 
review be de novo. Cf. City of Houston v. 
Blackbird, 394 S.W.2d 159, 160–61 (Tex. 1965). Nor did Lurie 
announce any general right to de novo appeal. Instead, it simply declined 
the city’s invitation in that case to limit appeal to substantial evidence 
review without guidance from the Legislature, based in part on the 
importance of the rights in question, but equally on the lack of legislative 
authorization. See Lurie, 224 S.W.2d at 875–76. 
Therefore, under Lurie, due process does not require that the judicial 
review be de novo, if the Legislature, in its grant of authority to abate 
a defined nuisance, has provided for a lesser standard of review. See id. 
at 876 (declining to apply substantial evidence 
review because no statute authorized doing so).
            
Here, the Legislature has authorized cities to abate a particular 
nuisance, and has specifically defined it as:
 
[A] 
building that is: (1) dilapidated, substandard, or unfit for human habitation 
and a hazard to the public health, safety, and welfare; (2) regardless of its 
structural condition, unoccupied by its owners, lessees, or other invitees and 
is unsecured from unauthorized entry to the extent that it could be entered or 
used by vagrants or other uninvited persons as a place of haborage or could be entered or used by children; or (3) 
boarded up, fenced, or otherwise secured in any manner if (a) the building 
constitutes a danger to the public even though secured from entry; or (b) the 
means used to secure the building are inadequate to prevent unauthorized entry 
or use of the building in the manner described in Subdivision (2).
 
 
Tex. Loc. Gov’t Code 
§ 214.001(a)(1)–(3). This definition of 
what constitutes a nuisance is specific, and constitutes a nuisance in fact. 
See Spartan’s Indus., 447 S.W.2d at 413 
(observing that a nuisance in fact is a condition that “endangers the public 
health, public safety, public welfare, or offends the public morals”). 
Thus, unlike the statute in Stockwell,[6] or the charter in Reagan,[7] the grant in question here is 
circumscribed to specific conditions that constitute a nuisance in fact, and the 
municipality or agency is not allowed to define the nuisance. Further, the 
authorization specifies that judicial review is limited by the substantial 
evidence rule, Tex. Loc. Gov’t Code 
§ 214.0012(f), which stands in stark contrast to the situation in 
Lurie, where the statute was silent as to the standard of review, see 
Lurie, 224 S.W.2d at 874, 876.
            
As Justice Johnson notes in his dissent, the Court effectively overturns 
the statutory system created by the Legislature to facilitate nuisance 
abatement. This is especially troubling because the Legislature appears to have 
made every reasonable effort to draft these statutes in accordance with the 
relevant standards pronounced by Texas courts, including other due process 
requirements not at issue here. In particular, the statutes provide for: (1) 
notice and hearing, compare Tex. 
Loc. Gov’t Code § 214.001(b)(2)–(3), 
with Perry v. Del Rio, 67 S.W.3d 85, 92 (Tex. 2001), (2) a chance to 
remedy the nuisance, compare Tex. 
Loc. Gov’t Code § 214.001(d), with Crossman, 247 S.W. 
at 812, (3) notice to mortgagees and lienholders, 
compare Tex. Loc. Gov’t 
Code § 214.001(h), with State Bank of Omaha v. Means, 746 
S.W.2d 269, 270 (Tex. App.—Texarkana 1988, writ denied), (4) a right to judicial 
appeal, compare Tex. Loc. Gov’t 
Code § 214.0012, with Blackbird, 394 S.W.2d at 161; 
Crossman, 247 S.W. at 813; Stockwell, 221 
S.W. at 934–35, and (5) a clear definition of what constitutes a nuisance in 
this context, compare Tex. Loc. 
Gov’t Code § 214.001(a)(1)–(3), with 
Stockwell, 221 S.W. at 934–95.
            
In addition, there is no need for the novel course the Court embarks on 
today. Although there are important substantive rights behind the 
procedural issue in this case—i.e., rights under the Takings Clause—creating a 
new procedural entitlement to protect such rights is unnecessary. The 
right to compensation for takings of private property is a vital one, as 
evidenced by its enshrinement in both the Federal and Texas Constitutions. 
Without reservation, I share the Court’s laudable concern with preventing 
uncompensated takings. As such, I note that even under substantial evidence 
review, it is still possible to prove that an agency’s or municipality’s action 
is illegal, see Brazosport Sav. & Loan Ass’n, 342 S.W.2d at 752, which might well be relevant 
if an agency or municipality acts outside of its authority, as by using the 
nuisance procedures to actually take title to a piece of real property, or by 
violating the procedures in Local Government Code chapters 54 and 214, or other 
statutes. Accordingly, our system already provides adequate safeguards for 
property owners, without thwarting the intent of the Legislature as the Court 
does.
            
In summary, the Legislature has both (1) validly defined the nuisance in 
question and authorized its abatement, 
Tex. Loc. Gov’t Code § 214.001, and (2) specified what standard of review 
applies, id. § 214.0012(f). As a result, I would conclude that the urban 
nuisance statutes at issue comport with our nuisance precedents, and therefore 
afforded Stewart due process, and thus should have precluded Stewart’s takings 
claim.[8]
            
II. The Court’s Reasons for Disregarding our 
Nuisance Jurisprudence Fall Short
 
            
The Court circumvents our due process nuisance jurisprudence 
discussed above in favor of a takings inquiry. Its justifications for doing so 
are (1) a misreading of the extent of our holding in Steele v. City of 
Houston, and (2) an entirely novel application of the constitutional 
fact doctrine. Both of these justifications fail.
            
A. Misplaced Reliance on Steele
            
The Court argues that the Stockwell–Lurie line of cases described above 
is no longer valid in light of Steele v. City of Houston, 603 S.W.2d 786 
(Tex. 1980). This exaggerates the scope of Steele. The Court 
cogently describes Steele’s actual effect, which was to make clear that 
the Takings Clause is self-executing, thereby reversing the prior assumption 
that the State enjoyed sovereign immunity from takings claims. But the Court 
then extrapolates that Steele also precluded the Legislature from 
summarily abating nuisances in fact. The problem with that assumption is that 
Steele in no way modified or curtailed the State’s police power; instead, 
it merely removed the shield of sovereign immunity from the exercise of that 
power. See id. at 791 (“The Constitution itself 
is the authorization for compensation for the destruction of property and is 
a waiver of governmental immunity for the 
taking . . . of property for public use.”) (emphasis added).
            
 In fact, Steele says very little about the question in this 
case—in Steele, there was no due process at all, because the Houston 
police summarily set fire to the plaintiff’s home in an attempt to flush out 
fugitives, id. at 789, nor was the city claiming 
to abate a nuisance, see generally id. Steele simply stands for the 
proposition that the Takings Clause is self-executing, and that sovereign 
immunity is waived for takings claims. See id. at 789. An important point, to be sure, but one that is not 
relevant where, as here, the Takings Clause is inapplicable because there was a 
proper nuisance abatement, rather than a taking. See Samuels, 267 U.S. at 
196.
            
B. The Constitutional Fact Doctrine
            
The Court further reaches its conclusion by a novel adoption and 
application of the constitutional fact doctrine. But there are two important 
reasons that I would decline to import that doctrine from its proper, federal 
context.
            
First, the doctrine is generally applied in the context of the First and 
Fourth Amendments, not to nuisance or takings questions, as the Court itself 
admits. __ S.W.3d __; see, e.g., Ornelas v. United States, 517 U.S. 690, 697 
(1996); Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485 
(1984). The common thread in those cases is that the “fact” in question 
is of highly subjective intent—such as whether an alleged defamer acted with 
actual malice, or whether the police had probable cause. See Bose Corp., 
466 U.S. at 515 (Rehnquist, J., dissenting) (noting that the constitutional fact 
issue in a First Amendment case is “no more than findings about the mens rea of an 
author”). Also, such cases involve the development and application of 
complicated, constitutional legal standards. See Ornelas, 517 U.S. at 697 (explaining that “the 
legal rules for probable cause and reasonable suspicion acquire content only 
through application,” thus requiring independent review “if appellate courts are 
to maintain control of, and to clarify, the legal principles”). By contrast, 
whether a building is so dilapidated as to constitute a danger to health and 
safety is not a legal rule that “acquires content” only through independent 
judicial review. Rather, it is a rule that derives its content from the specific 
statute in question. See Tex. 
Loc. Gov’t Code § 214.001(a)(1)–(3). 
Indeed, a major concern of our nuisance precedents, such as Stockwell, was to ensure that cities and 
agencies only act under a specific statutory definition, limited to nuisances in 
fact, thus rendering inapplicable here the concerns that motivated the Supreme 
Court to “reinvigorate” the constitutional fact doctrine.
            
Second, the Court’s reason for applying the doctrine is disquieting, both 
for its unsound basis, and for the breadth of its potential application in 
future cases. The Court applies the doctrine merely because “[t]akings claims also typically involve mixed questions of fact 
and law.” __ S.W.3d __. But mixed questions of fact and 
law abound in our legal system. See, e.g., Intercont’l Grp. P’ship v. KB Home Lone Star L.P., 295 S.W.3d 650, 666 
(Tex. 2009) (Brister, J., dissenting) (“Whether a party prevailed in litigation 
is a mixed question of law and fact.”); Richey v. Brookshire Grocery 
Co., 952 S.W.2d 515, 518 (Tex. 1997) (explaining that probable cause is “a 
mixed question of law and fact” in malicious prosecution cases when the parties 
dispute the underlying facts). Under the Court’s reasoning, it appears that 
every mixed question of fact and law that is even alleged to touch on a 
constitutional right is now a “question of constitutional fact.” Further, it is 
unclear how the Court’s decision can be squared with our rule that “[w]e review 
a trial court’s decision on a mixed question of law and fact for an abuse of 
discretion.”[9] State v. $217,590.00 in U.S. 
Currency, 18 S.W.3d 631, 633 (Tex. 2000). What is particularly worrisome is 
that, while the Supreme Court takes pains to cabin both its reasons for applying 
the doctrine and the doctrine’s scope, this Court today provides no such 
limiting guidance.[10] See, e.g., Bose Corp., 466 
U.S. at 510–11; see also Henry P. Monaghan, Constitutional Fact 
Review, 85 Colum. L. Rev. 
229, 272–73 (1985).[11] Because of the differences 
between regulatory and conventional takings cases, it is generally inappropriate 
to treat regulatory takings cases as controlling precedent for conventional 
takings. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg’l Planning Agency, 535 U.S. 302, 323 (2002); 
Lowenberg v. City of Dallas, 168 S.W.3d 800, 
801–02 (Tex. 2005) (per curiam). The Court errs 
when it relies on such cases here.
            
III. Conclusion
            
The Court’s decision opens the door to a host of takings challenges to 
agency determinations of every sort, and in every such challenge a right to 
trial de novo will be claimed. Judges at every level of our court system are 
invited by today’s decision to substitute their own factual determinations for 
that of an agency or even a lower court. The consequences of the Court’s 
decision will not be limited to the courtroom. As discussed above, cities are 
faced with complex challenges posed by a crisis level of abandoned and dangerous 
buildings, and one of the most important weapons provided by the Legislature to 
combat this problem is summary nuisance abatement. It is therefore unsurprising 
that the Attorney General and almost a dozen cities have rallied in support of 
the statutes by appearing as amici curiae.[12]
            
Because the Legislature has both (1) validly defined the nuisance in 
question and authorized its abatement, Tex. Loc. Gov’t Code § 214.001, 
and (2) specified what standard of review applies, id. 
§ 214.0012(f), due process does not require de novo review under our 
precedents. The Board’s finding, pursuant to that authority, as affirmed by the 
trial court on substantial evidence review, should have precluded Stewart’s 
takings claim. Accordingly, I would reverse the court of appeals and render 
judgment that Stewart take nothing.
 
            

____________________________________
                                                                                    
Eva M. Guzman                                                                                    
Justice
 
OPINION DELIVERED: July 1, 2011
 
 
 
 






[1] 
See, e.g., Kristin M. Pinkston, In the Weeds: Homeowners 
Falling Behind on Their Mortgages, Lenders Playing the Foreclosure Game, and 
Cities Left Paying the Price, 34 S. 
Ill. U. L.J. 621, 627–33 (2010).

[2] 
Melissa C. King, Recouping Costs for Repairing 
“Broken Windows”: The Use of Public Nuisance by Cities to Hold Banks Liable for 
the Costs of Mass Foreclosures, 45 Tort Trial & Ins. Prac. L.J. 97, 
98–101 (2009); see generally James Q. Wilson & George L. Kelling, Broken Windows, Atlantic Monthly, Mar. 1982, at 
29.

[3] 
See, e.g., King, supra note 2, at 99; Joseph Schilling, 
Code Enforcement and Community Stabilization: The 
Forgotten First Responders to Vacant and Foreclosed Homes, 2 Alb. Gov’t L. Rev. 101, 129–30 (2009).  
 

[4] 
The Court asserts that I present no “logical 
reason” for treating this nuisance case differently from an eminent domain case. 
__ S.W.3d __ n. 21. To the contrary, the distinction is 
not only logical, it is followed by the Supreme Court. 
See Samuels, 267 U.S. at 196. The exercise of eminent domain is not the 
same thing as nuisance abatement. Compare generally 54 Tex. Jur. 3d Nuisances (2010), 
with 32 Tex. Jur. 3d Eminent Domain 
(2008).

[5] 
The Stockwell 
opinion clearly distinguished between (1) the commissioner’s 
determination that citrus canker was a nuisance generally, and (2) the 
particular finding that Stockwell’s hedge should be 
destroyed as a result. See Stockwell, 221 S.W. 
at 935 (“Viewing the powers given the Commissioner by this statute and his 
attempted exercise of them here, the inquiry naturally arises as to what are the 
rights of the defendant if the Commissioner was mistaken in his judgment that 
citrus canker was a contagious plant disease, destructive of citrus fruits, 
or as to its being necessary to destroy . . . all of the trees in the 
defendant’s hedge.”) (emphasis added).

[6] 
The Court inappropriately reasons that the 
statutes in Stockwell and in this case are 
equivalently broad, see __ ­­S.W.3d __, but they are not. The 
relevant statute in Stockwell was a general, 
catch-all provision: “‘or other injurious insect pests or contagious diseases 
of citrus fruits.’” Stockwell, 221 S.W. at 
934 (quoting former Tex. Civ. 
Stat. art. 4459). By contrast, as discussed above, the statute here (1) 
specifically defines the nuisance, (2) is limited by its terms to nuisances in 
fact, and (3) contains no catch-all provision such as the one in Stockwell. See Tex. Loc. Gov’t Code 
§ 214.001(a)(1)–(3). Thus, unlike the 
statute in Stockwell, the statute here would 
not permit the Board to determine that a building is a “nuisance” when that 
building is not a nuisance in fact, nor does the statute purport to give the 
Board authority to determine what kind of condition is a 
nuisance.

[7] 
The Court’s comparison of the charter in 
Reagan and the instant statute also fails. The charter in Reagan 
was not limited to nuisances in fact because any dilapidated building 
could purportedly be demolished pursuant to the charter, and the Reagan 
Court accordingly suggested that the charter was invalid on this point because 
not even the Legislature can declare something a nuisance that is not so in 
fact. See Reagan, 247 S.W. at 817; Stockwell, 221 S.W. at 934. But here, section 214.001 
is limited to conditions that are nuisances in 
fact.
                
 The Court attempts to 
explain away this distinction by invoking the last antecedent rule to 
misconstrue section 214.001 as allowing demolition of homes for merely being 
“dilapidated” or “substandard,” and reasons that the definition is thus not 
limited to nuisances in fact. __ S.W.3d __ n.14. 
However, that canon of construction is “‘neither controlling nor inflexible.’” 
Spradlin v. Jim Walter Homes, Inc., 34 
S.W.3d 578, 580 (Tex. 2000) (quoting City of Corsicana v. Willmann, 216 S.W.2d 175, 176 (Tex. 1949)). Moreover, 
the Legislature is presumed to know existing law when it enacts a statute, 
Acker v. Tex. Water Comm’n, 790 S.W.2d 299, 301 
(Tex. 1990), and when the Legislature enacted section 214.001 in its current 
form, it was already established that being dilapidated alone does not make a 
building a nuisance in fact, Crossman, 247 S.W. at 812. Thus, the Court, 
by construing the statute to authorize abatement of buildings merely for being 
substandard or dilapidated, imputes to the Legislature an intent it is presumed 
not to have. When read fairly and as a whole, Local Government Code section 
214.001 displays a clear intent by the Legislature to only authorize abatement 
of nuisances in fact, that is, conditions that are actually dangerous to public 
health, safety, and welfare.
 

[8] 
The Court asserts that the general rule of de novo 
determination or review of nuisance findings is “unlikely ever to apply again” 
under my approach. __ S.W.3d __ n.12. But there are 
many types of nuisance beyond the narrow scope of the Legislature’s 
authorization of abatement of certain urban nuisances at issue here. For 
example, there are such traditional nuisance actions as abatement of extremely 
loud noises, see, e.g., Estancias Dallas Corp. v. Schultz, 500 
S.W.2d 217, 218 (Tex. Civ. App.—Beaumont 1973, writ ref’d n.r.e.), or smells from a 
cattle feed lot, see, e.g., Meat Producers, Inc. v. McFarland, 476 
S.W.2d 406, 409 (Tex. Civ. App.—Dallas 1972, writ ref’d n.r.e.), neither of which 
fall within the definition of urban nuisance found in section 214.001 of the 
Local Government Code. Such suits are real and recurring, and will continue to 
be governed by the general rule—that whether the condition is a nuisance is a 
judicial question. This is because Stockwell 
and its progeny make clear that the Legislature must specifically define the 
nuisance in order to provide for its summary abatement. See Stockwell, 221 S.W. at 934. The Legislature has 
done so here, and it is precisely because the definition is specific that 
the statutory scheme does not cover vast areas of nuisance law—leaving the 
general rule intact in most instances.
 

[9] 
Although the Court asserts that its holding is 
limited to “review of agency decisions of substantive constitutional rights,” 
and thus “does no violence” to the general rule, __ S.W.3d __ n.25, that 
assertion alone does not suffice to cabin the Court’s holding, nor does it 
explicate the relationship between today’s opinion and the general rule. The 
cases cited by the Court on this point, see id., are disparate examples 
of heightened review in various contexts, and generally do not address the 
proper framework for review of mixed questions of law and fact in light of the 
Court’s opinion.

[10] As a 
particularly relevant example, the Court’s decision today is contrary to 
Crowell v. Benson, 285 U.S. 22 (1932). In that case, the Supreme Court 
limited the scope of the closely related jurisdictional fact doctrine by 
noting:
 
And where administrative bodies have been appropriately 
created to meet the exigencies of certain classes of cases and their action is 
of a judicial character, the question of the conclusiveness of their 
administrative findings of fact generally arises where the facts are clearly not 
jurisdictional and the scope of review as to such facts has been determined by 
the applicable legislation.
 
Id. at 
58. Crowell thus confined its 
holding to specifically exclude cases just like this one, where the Legislature 
has provided for administrative bodies to make quasi-judicial determinations as 
to nonjurisdictional and nonconstitutional facts, and has specified the appropriate 
scope of review: that of substantial evidence.
                
 The limitation found in 
Crowell is germane here because, although the Supreme Court was 
addressing the jurisdictional fact doctrine, that doctrine is an English 
antecedent of the constitutional fact doctrine, Henry P. Monaghan, 
Constitutional Fact Review, 85 Colum. L. Rev. 229, 249 (1985), and by 
applying the jurisdictional fact doctrine in the American, constitutional 
context, the Supreme Court “both confirmed and generalized the constitutional 
fact doctrine in strong terms,” id. at 253. 
“While conceding that ordinary facts could be established in the 
administrative process, the Court held that constitutional facts must be 
found by the courts.” Id. (emphasis added).

[11] It is further 
worth noting that as part of its justification for ignoring the long-established 
distinction between nuisance abatement and takings, and for invoking the 
constitutional fact doctrine, the Court relies on regulatory takings 
cases such as Mayhew v. Town of Sunnyvale, 964 S.W.2d 922 (Tex. 1998) 
and City of College Station v. Turtle Rock Corp., 680 S.W.2d 802 
(Tex. 1984). However, the Court fails to properly distinguish between regulatory 
and conventional takings. Although this is not a takings case, if it were it 
would be a conventional taking, not a regulatory taking; Stewart’s property was 
destroyed outright, rather than having its value marginally impaired by a 
regulation. See Sheffield Dev. Co. v. City of Glenn 
Heights, 140 S.W.3d 660, 672 (Tex. 2004).
 

[12] See 
Brief of the State of Texas as Amicus 
Curiae, City of Dallas v. Stewart, No. 09-0257 (Tex. Feb. 3, 2010); Brief of 
Amici Curiae City of San Antonio, Texas, City of 
Houston, Texas, In Support of Petitioner City of Dallas, Stewart, No. 
09-0257 (Tex. Sep. 17, 2009); Brief of Amici Curiae 
the Cities of Aledo, Granbury, Haltom City, Kennedale, Lake Worth, North 
Richland Hills, River Oaks, Saginaw and Southlake, Texas, Stewart, No. 
09-0257 (Tex. May 11, 2009).